HERBERT *v.* ZIEGLER

[No. 188, September Term, 1957.]

*Decided March 27, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Claude A. Hanley* and *Charles J. Hessian* for the appellant.

*John R. Cicero* and *W. Thomas Gisriel* for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The owner of a riding academy, one Herbert, against whom a patron who had been thrown from a rented horse obtained a judgment, seeks reversal because the trial court erred in refusing to direct a verdict for him and in denying him a judgment notwithstanding the verdict.

On a Sunday morning in July, one Ziegler, with his eleven-year old son, went to the riding stable to hire two saddle horses. They were greeted by a young man fourteen to sixteen years of age named Bob Patterson. Ziegler asked Patterson for two of the gentlest horses. The tack room was locked, and the key was brought by Herbert's fourteen-year old son. Patterson saddled two horses with the help of young Herbert and gave Ziegler a horse named "Chubby", and Ziegler's son a horse named "Raven". Patterson helped Ziegler mount Chubby, adjusted the stirrups, took hold of the reins, pulling them tight in back of the horse's neck so that Ziegler could not hold them, and began to lead the horse towards the bridle path. Almost immediately the left stirrup slipped, and Patterson stopped the horse and was about to adjust the stirrup when a Dalmatian dog called "Poppy", belonging to Mrs. Herbert, came running at Chubby's legs, growling and barking. Chubby shied or bolted to the left, and Ziegler was thrown off to the right. He landed on his

back, and with his right foot still in the stirrup was dragged fifteen to twenty-five feet. A little later he remounted and rode for a short time so as not to disappoint his son, and then came back, paid Patterson for the horses and went to a hospital where it was discovered that his twelfth thoracic vertebra was fractured. The jury gave him a substantial verdict for his expenses, his suffering and his permanent partial disability.

There is no dispute that Herbert, as a business, invited the public to come and pay to ride the horses he kept; that the Dalmatian dog had been bought by him and given to his wife some three years before; that the dog was allowed to run loose and to stay in the barn with the horses; that Chubby was generally a kind, tractable horse, often ridden by children; and that he had been used regularly at the riding academy for more than a year when the accident occurred.

Ziegler proved that Patterson had rented a horse to a patron several months before the accident, and that in the week that followed another rider had rented a horse from Patterson. No real effort was made by Herbert to deny that Patterson was his agent, and in the opinion denying the motion for judgment n. o. v., the trial court said: "There seems to be no doubt, and it is conceded by counsel, that the Patterson boy was an agent of the Defendant at the time of the accident and was acting in the course of his employment."

Ziegler's son testified that young Herbert had released Raven, which he had been leading, and was facing away from the scene until his attention was attracted to Ziegler on the ground, and that then he asked Patterson what had happened and Patterson replied: "Poppy scared Chubby again."

Ziegler was clearly an invitee, a business visitor, to whom Herbert owed the duty of exercising ordinary and reasonable care commensurate with the environment and circumstances involved. *May Co. v. Drury,* 160 Md. 143; *Beverly Beach Club v. Marron,* 172 Md. 471; *Glaze v. Benson,* 205 Md. 26; *Austin v. Buettner,* 211 Md. 61. Ordinary and reasonable care in the conduct of a riding academy must necessarily include the furnishing of horses that do not have habits, traits or propensities likely to result in injury to their riders.

The Supreme Judicial Court of Massachusetts, in holding liable to one injured the owner of a horse that had a propensity to run away when started for home, put the matter succinctly in *Lynch v. Richardson,* 39 N. E. 801, when it said: "It was the duty of the defendant to try to inform himself in regard to the habits of horses kept in his stable for use in his business." For essentially the same holdings, see *Palmquist v. Mercer* (Cal.), 272 P. 2d 26, 30; *Evans v. Upmier* (Ia.), 16 N. W. 2d 6. To hold liable the owner of a domestic animal that has caused injury, the claimant must show that the owner knew, or by the exercise of ordinary and reasonable care should have known, of the inclination or propensity of the animal to do the particular mischief that was the cause of the harm. *Twigg v. Ryland,* 62 Md. 380, 386; and *May Co. v. Drury, Evans v. Upmier,* and *Lynch v. Richardson,* all *supra; Prosser, Torts* (2d ed.), Sec. 57, pp. 323-325; *Restatement, Torts,* Sec. 518.

The knowledge of a servant of the traits or propensities of the animal in whose charge it has been placed is the knowledge of the master. This was set forth in *Twigg v. Ryland,* just cited, although there it was held, on the facts, that the master is not to be imputed with the knowledge of any servant that the animal may follow or be near. The opinion in *Twigg v. Ryland* relied on in part the case of *Baldwin v. Casella,* L. R. 7 Exch. 325, where the Court upheld a verdict for an infant whom a dog had bitten. So, too, did the opinion in *Buck v. Brady,* 110 Md. 568, 574, where the Court set out its facts—that an ordinary carriage dog was kept in the stable under the care and control of the defendant's coachman, who knew it to be cross and to have knocked down a child and to have scratched it, although the owner supposed the dog to be harmless and allowed it to play with his children—and then quoted with approval the language of Sir Samuel Martin: " 'The dog was kept in defendant's stable, and the defendant's coachman was appointed to keep it; the coachman knew the dog was mischievous, and it is immaterial whether he communicated that fact to the master or not; his knowledge was the knowledge of the master.' "

In passing on Herbert's contentions that the verdict should

have been directed for him and that his motion for judgment n. o. v. should have been granted, we assume the truth of all evidence and of all inferences of fact fairly deducible from it, which tend to support the claim of Ziegler. From Patterson's remark that "Poppy scared Chubby again", the jury could have found that whenever Poppy ran at Chubby, as he did on the day of the accident, the otherwise gentle horse became frightened and shied or bolted. The use of the word "again" clearly permitted the inference that one or more similar occurrences had happened before. Patterson's statement was part of the *res gestae,* having been made immediately after the accident and under its immediate spur. It was voluntary and spontaneous. It sprang out of and tended to explain the accident at a time so near to its happening as to preclude the idea of deliberate design. The statement showed the knowledge of Patterson as to the propensities of Chubby and his knowledge was the knowledge of Herbert, his master, since Patterson acquired it from his handling of Chubby, a part of the duties assigned to him by his master. *Patterson v. B. & O. R. R. Co.,* 133 Md. 276, 279; *Transfer Co. v. Glass Co.,* 169 Md. 358, 363; *Shirks Motor Express v. Oxenham,* 204 Md. 626.

This Court has said that if a plaintiff produces any testimony and any inference of fact fairly deducible therefrom of sufficient probative force to enable an ordinary, intelligent mind to draw a rational conclusion therefrom in support of his right to recover, the case must go to the jury. *Parr v. Board of County Commissioners,* 207 Md. 91; *Bowman v. Wooleyhan Transport Co.,* 192 Md. 686, 692. We think that an ordinary, intelligent mind could rationally find from the evidence that Patterson was Herbert's agent and acted in the course of his employment in renting the horse, Chubby, to Ziegler; that Patterson had knowledge of the propensity of Chubby to be frightened by Poppy; that the accident occurred as a result of the repetition of this propensity; and that the knowledge of Patterson, Herbert's agent, of the propensities of Chubby was legally imputable to Herbert. Therefore, we find no error in the action of the trial court in sub-

218

mitting the case to the jury and in permitting the verdict to stand.

*Judgment affirmed, with costs.*