## HARRISON *v.* HARRISON

[No. 151, September Term, 1971.]

*Decided January 17, 1972.*

The cause was argued before HAMMOND, C. J., and MCWILLIAMS, FINAN, SINGLEY and DIGGES, JJ.

*Louis A. Scholz,* with whom was *Alan E. Harris* on the brief, for appellant.

*John H. Bolgiano,* with whom were *Smith, Somerville & Case* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

This appeal is brought by Charles E. Harrison, the plaintiff in a personal injury action instituted against his son, Paul F. Harrison, the appellee herein, in the Circuit Court for Carroll County and later removed to the Circuit Court for Baltimore County (Maguire, J.) for trial before a jury. The elder Harrison appeals the lower court's disposition of the action in directing a verdict in the appellee's favor at the conclusion of the plaintiff's case.

Charles E. Harrison owned and operated a dairy farm maintaining a herd of Holstein cows and bulls in Carroll County, Maryland from 1923 until he turned the farm over to his sons in 1955. From 1955 until the time of the injury complained of, the appellant continued to work on the farm as a paid employee of his son, Paul. On February 16, 1967, while doing the regular chores of feeding the cows and bulls in the "loafing shed" area of the farm, a young Holstein bull which had been purchased by Paul some three weeks earlier, suddenly charged and hit the appellant, knocking him approximately 15 feet and causing him to suffer three broken ribs and a dislocated shoulder. The injuries prevented the appellant from working for a period of three or four months, and for a period of a year they continued to affect his capacity to perform his normal duties on the farm. On

February 13, 1970, Mr. Harrison filed suit against his son, Paul, alleging negligence and claiming $60,000 in damages.

The testimony presented in the court below disclosed that there are two principal methods of breeding cattle, that of using a bullpen in order to separate the bull from the cows until the time that servicing is to occur, and that of allowing the bull and cows to roam together at all times. The appellee used the latter method in the operation of his farm, permitting his bull to remain with the cows in the "loafing shed," a fenced, covered area where the cows are milked and where they stay during inclement weather. Additionally, the appellee testified that the bull which struck the appellant did not have a ring in its nose, and that the farm was not equipped with an electric fence, an electric stick (a device which provides an electric shock to prod and control large animals) or a staff (a long pole which when attached to the ring in a bull's nose allows one to guide the animal).

While it was conceded by the appellee that the use of a bullpen, a "bull ring" and staff, and an electric fence or an electric stick would be safer than not using them, the appellant admitted on deposition that many of the smaller farmers in Carroll County did not use bullpens, and he admitted on cross-examination that he never used a bullpen when the farm was under his control.

The appellant contended in the court below and now contends on appeal that the failure of Paul to equip the farm and bull with safety devices, combined with the fact that Paul never obtained safety bulletins which he knew were available from the United States Department of Agriculture, constitutes a violation of an employer's statutory duty to provide a safe place of employment and therefore amounts to a *prima facie* case of negligence. Judge Maguire, however, found first that "there was no negligence on the part of Paul Harrison to submit to the jury for determination;" second, relying on *Lawrence v. Cavanaugh*, 249 Md. 176, 238 A. 2d 859 (1968), that the plaintiff had assumed the risk of the

happening which caused the injury; and third, that even if the defendant had been guilty of primary negligence and the plaintiff had not assumed the risk, that the plaintiff was guilty of contributory negligence. Accordingly, the court directed a verdict in Paul's favor from which his father now appeals.

Maryland Code (1969 Repl. Vol.), Art. 89, § 29 provides:

> "Every employer shall furnish and maintain employment and a place of employment which shall be reasonably safe and sanitary for employees. Every employer shall install, maintain and use such methods, processes, devices and safeguards, as are reasonably necessary to protect the life and safety of such employees, and shall do every other thing reasonably necessary to render safe and sanitary such employment and place of employment."

We think the lower court was correct in ruling that there was no primary negligence on the part of Paul and accordingly, on that basis, we affirm the judgment for the defendant. We see no purpose to be served by a discussion of the issues of assumption of risk and contributory negligence and therefore confine this opinion to the question of primary negligence.

The thrust of the plaintiff's argument is that the defendant, contrary to the provisions of Article 89, Section 29, failed to provide him with a "reasonably safe place" in which to work and that negligence may be inferred from this violation of the statute. The short answer to this contention is that the evidence in the case was not sufficient to raise a question for the jury as to whether the loafing shed and the manner in which it was operated was not a "reasonably safe" place in which to work and hence a violation of the statute. The plaintiff produced no probative evidence to substantiate his claim that the use of the loafing shed as opposed to a bullpen constituted a lack of due care. The testimony

revealed that the plaintiff himself, in the many years that he personally operated the farm prior to turning it over to his sons, never used a bullpen but let his bull roam with the cows. Apparently, he did not use a loafing shed either, as this was constructed by his sons in 1955; however, we think the basic fact to consider in this regard is, that the bull was free to roam among the cows, and whether it was in the field or in a loafing shed is of no significance. As noted in our statement of facts, there was undisputed evidence to the effect that many small farmers in Carroll County did not use bullpens.

The mere fact that the bullpen is "safer" than a loafing shed, as a method to bring the bull into contact with the cows, is insufficient to prove negligence. The test as to whether the employer has fulfilled his statutory duty to provide the employee with a "reasonably safe place to work," is not *per se* a comparison of standards, that is, it is not a question of whether one method may be "safer" than another, but rather, whether, the use of the method employed was reasonable under the circumstances.

We would also add that in the instant case there were no prior indications that the young bull in question had vicious propensities or temperament. In fact during the three weeks it had been on the farm, the plaintiff had fed it about half of the time that it had been there and during that time it had appeared docile. In *Herbert v. Ziegler*, 216 Md. 212, 139 A. 2d 699 (1958), we said:

> "* * * To hold liable the owner of a domestic animal that has caused injury, the claimant must show that the owner knew, or by the exercise of ordinary and reasonable care should have known, of the inclination or propensity of the animal to do the particular mischief that was the cause of the harm. * * *" 216 Md. at 216.

Therefore, there was no apparent need to take any unusual precautionary measures in regard to this particu-

lar bull. See also *McDonald v. Burgess,* 254 Md. 452, 457, 255 A. 2d 299 (1969); *Finneran v. Wood,* 249 Md. 643, 648, 241 A. 2d 579 (1968). The *Ziegler* and *Wood* cases involved horses and the *Burgess* case a dog; however, a reading of *Restatement of Torts,* Sec. 509 at 20 (1938) is persuasive of the fact that the law has never considered bulls, "as abnormally dangerous animals."

In the instant case we think it relevant to the question of liability that in weighing comparative knowledge of the employee and employer regarding the place of work, and the means and methods used, that the father, who is the employee in this case had an equal, if not superior knowledge to the son, the employer. In *Bauman v. Woodfield,* 244 Md. 207, 216, 223 A. 2d 364 (1966), we said:

"It is axiomatic that actionable negligence is the breach of a duty that is owed to another. If no duty is owed, then no action can be sustained even though an injury has occurred. *Hettchen v. Chipman,* 87 Md. 729, 41 Atl. 65. In order that an act or omission may be regarded as negligent, the person accused of negligence must have known or should have known that danger was involved in such act or omission or that the instrumentality or property causing the injury was in some way defective or dangerous. *Adams v. Carey,* 172 Md. 173, 190 Atl. 815. * * * However, it is the affirmative duty of an employer in a master-servant relationship to provide his employee with a reasonably safe place in which to work and to warn and instruct his employee concerning the dangers of the work known to him which are not obvious and can not be discovered by the exercise of reasonable care by the employee. This duty is relative and conditional, and what would be a full discharge of the duty under one set of circumstances may not be under another. The duty to warn or in-

struct depends upon the age, understanding, and experience of the employee and upon the nature of the work. * * *" 244 Md. at 216.

We would note, also, that the safety implements emphasized by the appellant and which were contained in the Department of Agriculture brochures (other than the bullpen which we have already discussed), such as the ring in the nose of the bull and the electric cattle prod, are devices used primarily to lead or direct cattle. They would have been of no avail in the instant case because the bull attacked the plaintiff without warning and before he was aware of its actions.

As stated in *Finneran v. Wood, supra,* at 645 we have considered the evidence and all logical and reasonable inferences deducible therefrom in a light most favorable to the plaintiff and find that there was not sufficient evidence of negligence to submit this case to the jury.

*Judgment affirmed, appellant to pay costs.*