578 A.2d 274

**B & K RENTALS & SALES CO., INC.**

**v.**

**UNIVERSAL LEAF TOBACCO CO., et al.**

**No. 480, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Aug. 30, 1990.

Certiorari Granted Jan. 9, 1991.

---

Georgia Lewis Leonhart, Baltimore, for appellant.

Albert D. Brault (Janet S. Zigler and Brault, Graham, Scott & Brault, on the brief), Rockville, for appellees.

Argued before WILNER and GARRITY, JJ., and RICHARD M. POLLITT, J., Retired, specially assigned.

WILNER, Judge:

Appellant is in the business of supplying scaffolding and seating for public gatherings. In May, 1980, it entered into a lease with appellee to store some of its equipment in appellee's tobacco warehouse in Anne Arundel County. On April 6, 1985, a fire broke out at the warehouse that destroyed all or most of the equipment appellant had stored there. Believing that the fire was caused by the negligence of appellee and its employees, appellant brought this action for damages in the Circuit Court for Anne Arundel County.

For reasons that we shall shortly discuss, appellant had a difficult time establishing at trial how the fire started, and appellee twice moved for judgment based on appellant's failure to prove negligence, either directly or by inference. Those motions were denied, however, and the case was submitted to a jury, which returned a verdict in appellant's favor for $123,252. The court thereupon decided that the evidence as to negligence really was insufficient and granted appellee's motion for judgment NOV. After its own motion to alter or amend that judgment was denied, appellant brought this appeal.

When the appeal was first before this Court, appellee insisted that our review was limited to whether the circuit court abused its discretion in denying appellant's motion to alter or amend the judgment NOV and did not extend to the substantive correctness of that judgment. That argument was based on some restrictive language in appellant's notice of appeal. We found the argument plausible, limited our consideration to whether the court abused its discretion in granting the judgment NOV, found that it had not, and therefore affirmed the judgment. *B & K Rentals v. Universal Leaf,* 73 Md.App. 530, 535 A.2d 492 (1988). The Court of Appeals disagreed with that limited approach, however, concluding that the appeal presented for consideration the issues raised by appellant as to the validity of the

judgment NOV. It therefore reversed our judgment and remanded the case to us for further proceedings. *B & K Rentals v. Universal Leaf,* 319 Md. 127, 571 A.2d 1213 (1990). We turn then to the issues presented by appellant.

## Trial Proceedings

There were only two people who had any direct knowledge of how the fire at the warehouse started—Walter Johnson and Leonard Grimes. Both men were employees of appellee and were working at the warehouse when the fire started. Neither of them was available to testify, however. Mr. Johnson was killed in the fire, and Mr. Grimes had apparently moved to Kentucky and could not be located. Lacking the benefit of those witnesses, appellant was forced to rely on evidence gathered by two fire investigators, Lieutenants Stallings and Klasmeier of the Anne Arundel County Fire Department. Some of that evidence consisted of their observations and photographs of the scene, which were admitted without objection.

The crux of the dispute was over appellant's attempt to introduce, through the investigators, statements made by Mr. Grimes to Lt. Stallings as to the conduct of Grimes and Johnson and as to how the fire may have started. This arose in essentially three contexts—the testimony of Lt. Klasmeier, the testimony of Lt. Stallings, and two written reports prepared by Lt. Stallings. The two reports were ruled inadmissible; Lt. Stallings was not permitted to express an opinion as to the cause of the fire because his opinion was based in part on statements made to him during his investigation by Mr. Grimes and other witnesses. Lt. Klasmeier, however, *was* allowed to express an opinion as to the cause of the fire even though his opinion was based in large measure on Lt. Stallings's report and the information supplied to Lt. Stallings by Mr. Grimes.

In its complaint, appellant averred that the fire started when, and because, Mr. Johnson "negligently, carelessly and improperly left a burning acetylene torch untended in the [warehouse]." No evidence of *that* was presented at

trial. There *was* evidence, essentially undisputed, that Johnson and Grimes were working in the warehouse that day, that there was no indication of vandalism, that an acetylene torch was present in the warehouse but that when found by Lt. Klasmeier the knob was in an "off" position, and that there were also present in the warehouse a number of dollies on small wheels that were used for moving tobacco. There was also evidence that string used to bundle the tobacco often became tangled in the dolly wheels and that it was appellee's practice to unclog the wheels by burning the string with a torch. The theory espoused at trial was that Johnson was burning string from the dolly wheels and that the fire somehow started from that operation.

The significance of the evidence as to the presence in the warehouse of the torch and the dollies came principally, as we said, from statements made by Mr. Grimes to Lt. Stallings. In a supplemental written report prepared for his Division Chief, Lt. Stallings stated that he arrived at the scene at about 2:00 p.m., while the fire was still burning, and that he spoke with a number of firefighters and other witnesses, including Mr. Grimes. Grimes told him that he (Grimes) had lit an acetylene torch for Mr. Johnson at about 11:00 that morning, that Johnson used the torch to burn string from the dolly wheels, that at some point Johnson went to chase some youngsters who were riding their bikes in the warehouse, that Johnson later reported that he had finished working with the wheels in the receiving area, and that, prior to beginning new chores, they walked to the office area to make some coffee. While waiting for the coffee to brew, "Leonard Grimes began to hear a 'popping' noise and looked out the office door seeing smoke coming from the area where Walter Johnson had just finished burning the string from the jack wheels." Lt. Stallings reported further that Grimes "did feel the cause for the fire was related to the strings being burned off the 'jack wheels' with the acetylene torch. The rear door was to have been open and the wind was blowing strong this date."

Upon this and the other information gathered by him, Lt. Stallings opined in his supplemental report that "the cause for the 9 alarm tobacco warehouse fire seems directly related to the open flame acetylene torch that was being used by Mr. Walter Johnson in burning strings from the jack wheels." He expressed essentially the same opinion in a separate report he prepared for the National Fire Protection Association, stating that "[t]he probable cause for the fire was as the result of a warehouse employee using an Acetylene torch to burn string off wheel Jacks/Dolly."

These two reports, though written by Lt. Stallings, were offered into evidence during the direct examination of Lt. Klasmeier. They were objected to on the ground of hearsay, actually double-level hearsay. Appellee urged that Mr. Grimes's statements to Lt. Stallings constituted the first level of hearsay and that Lt. Stallings's written report of those statements represented the second level of hearsay. Appellant acknowledged that to be the case but argued that Grimes's statements to Stallings were admissible as an admission of a party and that Stallings's report itself was admissible under the business record exception to the hearsay rule. Little or no question was raised that the reports constituted business records; they were ruled inadmissible because (1) the court found that Grimes's statements did not qualify as an admission (and were not admissible under the undifferentiated *res gestae* exception) and (2) as Stallings's opinion was based in large measure on those inadmissible statements, it too was inadmissible. Although Lt. Stallings also testified and identified his two reports, appellant did not attempt to introduce them again through him.

Lt. Stallings recounted for the jury what he did when he arrived at the scene, including the fact that he interviewed a number of people, among them Mr. Grimes. He stated that he had formed an opinion as to the cause and origin of the fire and that his opinion was based on his personal investigation, the expertise he had developed over the years, his view of the fire scene, and "upon [his] interviews with the seven ... interviewees." When asked to relate that opin-

ion, appellee's objection was sustained on the ground that the opinion was based partly on the statements of other people. Curiously, however, and to us inexplicably in light of this ruling, the court allowed Lt. Klasmeier to express *his* opinion as to the cause and origin of the fire even though his opinion was based principally on the reports of Lt. Stallings, and most particularly on what Lt. Stallings said Mr. Grimes had told him.[1] Klasmeier opined that "the cause and origin would have been the actions of Mr. Johnson using an acetylene torch to burn strings off of wheels inside the warehouse."

The court instructed the jury that appellant's claim was based on the alleged negligence of appellee, that appellant had the burden of proving that negligence, and that no inference of negligence arises from the mere happening of the event. It defined negligence as the doing of something that a person using ordinary care would not do or the not doing of something a person using ordinary care would do. It told the jury:

"However, if each of the following circumstances is more probable than not, you may consider that there was negligence. First, the event would not ordinarily happen without negligence. Second, the cause of the event was in the Defendant's exclusive control. Third, no action by anyone else including the Plaintiff was a cause of the event.

Should you find it was more probable than not that the Defendant was negligent then the Defendant is called upon for a satisfactory explanation- and may explain to

---

**1.** Before expressing his opinion, Lt. Klasmeier said that he had one and that it was "based on observations that were made at the scene and information that was gathered from people who were in the warehouse when the fire occurred." It was clear that the latter reference was to Mr. Grimes. After being permitted to state his opinion, he was asked how that information regarding Mr. Johnson's actions was conveyed to him, to which he replied "[i]t was conveyed to me by Lieutenant Stallings both verbally and in the form of a written report." Asked then how Lt. Stallings obtained that information, he said "[h]e interviewed Mr. Leonard Grimes on the fire scene."

your satisfaction that there was no negligence on his part which was a cause of the event. If you are not satisfied with the Defendant's explanation and conclude that the Defendant's negligence caused the Plaintiff's injuries, your verdict should be for the Plaintiff."

In its motion for judgment NOV, appellee argued that the court had erred in allowing Lt. Klasmeier's opinion as to the origin and cause of the fire. Somewhat inconsistently, as that opinion was really the only evidence as to origin and causation, it also urged that the case was not one for "res ipsa loquitur," because appellant had presented evidence through that opinion as to how the fire started. Relying principally on *Nalee, Inc. v. Jacobs*, 228 Md. 525, 180 A.2d 677 (1962), it asserted that appellant had proved too much to rely on the "doctrine" of *res ipsa loquitur* and too little to prove negligence directly. The court rejected the first complaint, confirming its belief that Lt. Klasmeier's opinion was admissible, but found merit in the second. Noting *Nalee,* it found that appellant had proved the cause of the fire but had failed to show that the use of the torch by Mr. Johnson was negligent. For that reason, it entered judgment for appellee.

### Issues

In this appeal, appellant presses its contentions that (1) the two written reports by Lt. Stallings should have been admitted, (2) it *did* produce sufficient evidence of negligence to sustain the jury's verdict, and (3) submission of the case on a *res ipsa loquitur* theory was proper. For whatever reason, appellant makes no complaint about the exclusion of Lt. Stallings's testimonial opinion as to the origin and cause of the fire. In defense, but without taking a cross-appeal, appellee continues to insist that Lt. Klasmeier should not have been allowed to express his opinion, without which there would be virtually no direct evidence of negligence.

The issues framed by the parties create a certain complexity in the case. The predominant question is whether

the court erred in granting judgment NOV. That, in turn, depends on whether there was sufficient evidence before the jury to permit it to find that appellee was negligent; if there was any legally relevant evidence, however slight, from which a rational mind could have found negligence on appellee's part, the entry of judgment NOV would be improper. In deciding that question, of course, we must look at the evidence that was, in fact, before the jury. What complicates the matter is that both sides maintain that the court erred in deciding what evidence went to the jury. Appellant insists that it was entitled to have the jury consider not only Lt. Klasmeier's testimony and opinion but Lt. Stallings's reports as well. Appellee, as noted, urges that Lt. Klasmeier's opinion should not have been allowed. These evidentiary questions ordinarily would be relevant more to whether a new trial was warranted than to whether a judgment NOV was proper, but here, because they bear on the sufficiency of appellant's evidence, we need to consider them in the context of the judgment NOV.

### Discussion

As we indicated earlier, the theory of negligence actually pled by appellant was that the fire was caused by Mr. Johnson having left a burning acetylene torch unattended. As we also noted, there was absolutely no evidence presented to establish that fact. Had the case rested on the theory pled by appellant, therefore, judgment NOV would have been required. The case, as tried, did not rest on that theory, however. It proceeded rather on the supposition that the fire somehow started from the burning of string by Mr. Johnson, and indeed evidence was presented in support of that theory. The jury had before it testimony and photographs establishing the presence in the warehouse of the dolly wheels and the torch, testimony that appellee's employees had used a torch to burn string from dolly wheels in the past, and Lt. Klasmeier's opinion that the fire was caused by Mr. Johnson's burning of string. This evidence certainly sufficed to permit the jury to determine

that the fire arose from the string-burning operation. It did not have to reach that conclusion, of course, but it reasonably could have done so.

At this point, we need to consider whether the court erred in permitting Lt. Klasmeier's opinion, for Klasmeier's opinion was really the linchpin of appellant's case; it alone gave meaning to the other evidence noted. Unfortunately, the context of the issue requires us to look not only at Lt. Klasmeier's opinion but Lt. Stallings's reports as well.

Although both Lt. Klasmeier and Lt. Stallings considered a number of things in reaching their respective conclusions as to the cause of the fire, it is clear, and really beyond rational dispute, that they relied principally on the statements of Mr. Grimes. But for his narrative, it seems evident that neither would or could have come to the conclusion stated. As we observed, appellee's attack on those opinions was based largely on the assertion that Grimes's statements constituted hearsay and that neither they nor any opinion based on them was admissible. We deal first with that question.

 Grimes's statements to Lt. Stallings were offered as an "admission" of a party, the theory being that, as Grimes was an employee of appellee, any statements of his that qualify as an admission would be attributable to appellee. As Professor McLain explains, "[u]nder Maryland common law, 'admissions of a party-opponent' are admissible as substantive evidence under an exception to the hearsay rule. Under the exception, a party is free to introduce anything an opposing party has said or done which is relevant to the case, without fear that a valid objection can be raised under the hearsay rule." McLain, *Maryland Evidence* § 801(4).1 (1987 & 1990 Supp.) (footnotes omitted). As she further points out, the statement need not be against the party's interest when made; rather, "the only requirements for admissibility ... are that (1) the statement was made, adopted, or authorized by a party *or that party's agent* ...; (2) the statement is offered in evidence

against that party by an opposing party; and (3) as with all evidence, the statement must be relevant to a material fact." *Id.* (footnotes omitted, emphasis added).

■ In point of fact, current Maryland case law requires more, when the statement is made by an agent of a party rather than the party himself, than the mere fact of agency. We pointed out in *Burkowske v. Church Hosp. Corp.*, 50 Md.App. 515, 439 A.2d 40 (1982), that "in order to bind the principal (and thus constitute an admission by *it*), the agent's statement not only must concern matters within the scope of his own agency authority *but must also be part of the res gestae, i.e., made contemporaneously with the transaction to which it relates.*" *Id.* at 520; 439 A.2d 40 (emphasis added).

Why this second condition of contemporaneity, which invokes a wholly independent exception, or set of exceptions, to the hearsay rule is, or should be, required is not explained in the Maryland cases. Indeed, the inclusion of this requirement has been justly criticized by such eminent authorities as Thayer, Wigmore, and McCormick as, in effect, applying substantive agency law as though it were a rule of evidence. *See* 6 J. Wigmore, *Evidence* § 1769 (Chadbourn rev. ed. 1976) (quoting, in part, Thayer, *Bedingfield's Case—Declarations as a Part of the Res Gesta*, 15 Am.L.Rev. 71, 80–81 (1881)). McCormick describes the development of the principle:

"When a party to the suit has expressly authorized another person to speak on his behalf, it is an obvious and accepted extension of the admission rule, to admit against the party the statements of such person. In the absence of express authority, how far will the statements of an agent be received as the principal's admission by virtue of the employment relationship? The early texts and cases used as analogies the doctrine of the master's substantive responsibility for the acts of the agent and the notion then prevalent in evidence law that words accompanying a relevant act are admissible as part of the *res gestae.* Thus they formulated the inadequate theory that the

agent's statements could be received against the principal only when made at the time of, and in relation to, some act then being performed in the scope of the agent's duty. A later theory that gained currency in the writings and opinions, is that the admissibility of the agent's statements into evidence as admissions of the principal is measured by precisely the same tests as the principal's substantive responsibility for the conduct of the agent, that is, the words of the agent will be received in evidence as the admissions of the principal if they were spoken within the scope of the authority of the agent to speak for the employer."

*McCormick on Evidence* § 267 (1984 & 1987 Supp.) (footnotes omitted).

Apart from what Wigmore (*supra,* § 1769) regards as the "fallacy" of intermingling a law of agency with a rule of evidence, the requirement that an agent's statements be contemporaneous with the event to be received as an admission appears to mix, unnecessarily, two very different evidentiary principles. If the statement is made under circumstances that would qualify it under what formerly was regarded as the *res gestae*—principally an "excited utterance" or a "present sense impression"—it would be admissible on that basis, whether or not the declarant was authorized by his employer to make the statement. The immediate nexus in time between the statement and the event recounted, presumably precluding the ability to fabricate, is what assures the reliability of the statement. The rationale for the "admission" exception is quite different. As noted by Professor McLain, *supra,* at § 801(4).1, it "is simply that the rationale for the hearsay rule is inapplicable to statements for which one is responsible. A party cannot complain of an inability to cross-examine himself or herself."

Immediately upon describing the development of this requirement, McCormick points out the weakness in it, especially in a context like that now before us:

"Probably the most frequent employment of this test is in the exclusion of statements made by employees after

an accident, to the injured party, to a police officer, or to some bystander, about the accident not made in furtherance of the employer's interest, but as a 'mere narrative.' This is the logical application of these tests, but the assumption that the test for the master's responsibility for the agents *acts* should be the test for using the agent's statements as *evidence* against the master is a shaky one. The rejection of such post-accident statements coupled with the admission of the employee's testimony on the stand is to prefer the weaker to the stronger evidence. The agent is well informed about acts in the course of the business, his statements offered against the employer are normally against the employer's interest, and while the employment continues, the employee is not likely to make the statements unless they are true. Moreover, if the admissibility of admissions is viewed as arising from the adversary system, responsibility for statements of one's employee is a consistent aspect. Accordingly, the predominant view now favors broader admissibility of admissions by agents if the statement concerned a matter within the scope of the declarant's employment and was made before that relationship was terminated. Of course, admissibility of the traditional authorized statement continues."

*McCormick on Evidence, supra,* § 267 (footnotes omitted, emphasis in original).

Jones supports McCormick's view that the courts seem to be relaxing the *"res gestae"* requirement. He observes (2 *Jones on Evidence* § 10:4 (1972 & 1990 Supp.) (footnote omitted):

"But there is a definite trend toward a less harsh rule, based on the realization that when a hearsay declarant is dead or otherwise unavailable to testify to the facts, his narration of past transactions should be admissible where made under circumstances showing clearly that he had no motive to make an untrue statement, even though the element of spontaneity or nervous excitement might be lacking.

In a jurisdiction where the res gestae character of a statement by an agent must be shown in order to bind the principal, in the absence of express authority to speak, considerable liberality has been shown by the courts, and narrative statements are frequently received where they are made in due course of business, though not simultaneously with the transaction or having the element of spontaneity."

The Federal Rules of Evidence appear to have done away with the requirement altogether. F.R.E. 801(d)(2) excludes party admissions as hearsay to begin with. Subsection (d)(2)(D) provides that "[a] statement is not hearsay if—The statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship. . . ." The only relevant temporal requirement is that the statement be made during the existence of the agency; nothing is said in the Rule or in the Advisory Committee Note to it about any condition of spontaneity or contemporaneity.

Whatever the trend or law may be elsewhere, and indeed whatever may be the logic of requiring contemporaneity in the case of an agent's statements, Maryland law established by the Court of Appeals is rather firm in imposing the requirement, and we are not at liberty to depart from that law. The requirement was first expressed, rather briefly, in *City Bank of Baltimore v. Bateman,* 7 H. & J. 104, 108 (1826). In *Franklin Bk. v. Steam Nav. Co.,* 11 G. & J. 28 (1839), the Court noted, at 33–34:

"So whatever is said by an agent, either in the making of a contract for his principal, or at the time, and accompanying the performance of any act, within the scope of his authority, having relation to, and connected with, and in the course of the particular contract or transaction in which he is then engaged, is in legal effect, said by his principal, and admissible in evidence; not merely because it is the declaration or admission of an agent; but on the ground, that being made at the time of, and accompany-

ing the contract or transaction, it is treated as the declaration or admission of the principal, constituting a part of the *res gestae*, a part of the contract or transaction, and as binding upon him as if in fact made by himself. But declarations or admissions by an agent, of his own authority, and not accompanying the making of a contract, or the doing of an act, in behalf of his principal, *nor made at the time he is engaged in the transaction to which they refer*, are not binding upon his principal, not being part of the *res gestae*, and are not admissible in evidence.... This distinction between the declarations or admissions of an agent, accompanying the making of, and constituting therefore a part of the contract or transaction, and such as are made at another time, runs through the books, and is clearly settled."

(Emphasis added.)

The requirement that the event and the statement concerning it be contemporaneous was even more restrictively refined in later cases. In *Dietrich v. Hall Spgs. R.R. Co.*, 58 Md. 347 (1882), an action by a passenger who was injured boarding a street railway car, the Court ruled inadmissible a statement made by the driver of the car to the victim's brother a half hour after the accident, offered through the brother's testimony, that the injury occurred because a step was missing from the car. Citing 1 Tayl.Ev. sec. 526, the Court held, at 356, that an act done by an agent cannot be explained "either by declarations or admissions made by him, which amount to no more than a mere narrative of a past occurrence, or by an isolated conversation held, or an isolated act done, at a subsequent time."

The same principle was stated and applied in *State v. Prince George's County*, 207 Md. 91, 106, 113 A.2d 397 (1955). That case arose from an accident in which a child fell out of the rear door of a school bus. In an interview with the bus driver after the accident, a policeman asked the driver when he had last checked the door, to which the driver replied three days earlier. The question was whether that statement was admissible through the policeman's tes-

timony as an admission against the county. Holding that it was not, the Court, as it had in *Dietrich,* concluded that statements by an agent " 'which amount to no more than a mere narrative of a past occurrence, or by an isolated conversation held, or an isolated act done, at a subsequent time' " do not qualify as an admission, and that the driver's statements were of that character. *Id.* (quoting *Dietrich, supra,* 58 Md. at 356). *See also Feigley v. Balto. Transit Co.,* 211 Md. 1, 7–8, 124 A.2d 822 (1956). Compare *United Rys. & Elec. Co. v. Cloman,* 107 Md. 681, 69 A. 379 (1908); *Patterson v. B. & O. R.R. Co.,* 133 Md. 276, 105 A. 159 (1918); *Montgomery Bus Lines v. Diehl,* 158 Md. 233, 148 A. 453 (1930); *Transfer Co. v. Glass Co.,* 169 Md. 358, 181 A. 672 (1935); and *Herbert v. Ziegler,* 216 Md. 212, 139 A.2d 699 (1958), where an agent's statements were held to be sufficiently contemporaneous with the event to be admissible against the principal.

In *Baltimore City v. Lobe,* 90 Md. 310, 45 A. 192 (1900), the Court described what it meant by the "narrative of a past occurrence." At 313, 45 A. 192, it stated the familiar rule that

"to make the declaration a part of the *res gestae* it must be so connected with the transaction as to be reasonably a part of it; it must not be the result of premeditation or design, but the 'immediate spur' of the transaction; and though it need not appear that it was spoken at the identical point of time when the principal fact happened, yet it must have been so soon thereafter as fairly to be a part of the transaction, and therefore elucidating and explaining it. But if the declaration was made after the main occurrence had ceased, and there is no necessary connection between it and the principal event, it is then nothing more than a narrative of a past occurrence, and is not admissible as a part of the *res gestae.*"

Although the term *"res gestae"* is no longer in vogue, having been discarded in favor of the more specific exceptions to the hearsay rule thought to have been embodied within it, the requirement of spontaneity remains with

respect to the two exceptions that might possibly govern this kind of situation—the excited utterance and the present sense impression. In *Booth v. State*, 306 Md. 313, 324, 508 A.2d 976 (1986), the Court said, as to the present sense impression exception:

"Although statements offered under this exception will usually be those made at the time an event is being perceived, we recognize that precise contemporaneity is not always possible, and at times there may be a slight delay in converting observations into speech. However, because the presumed reliability of a statement of present sense impression flows from the fact of spontaneity, the time interval between observation and utterance must be very short."

We applied the same rule to the excited utterance. In *Cassidy v. State*, 74 Md.App. 1, 17, 536 A.2d 666 (1988) Judge Moylan observed:

"The essential rationale for the Excited Utterance Exception is spontaneity arising immediately from the exciting event and not yet having abated when the utterance is made. *McCormick* [*Evidence* (3d ed. 1984) ] explains it simply, at 854–855:

'First, there must be an occurrence or event sufficiently startling to render inoperative the normal reflective thought processes of an observer. Second, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought.' "

As we further noted in *Cassidy,* the burden of production is on the proponent, not the opponent, and thus "[t]he opponent of hearsay does not have to show why it should be rejected. The fact that it is hearsay is, presumptively, reason enough." *Id.* at 8, 536 A.2d 666.

On this analysis, it seems clear that, under current Maryland law, Mr. Grimes's statements were inadmissible. There was no evidence that Grimes was, in fact, authorized by appellee to make those statements on its behalf. Nor

were they made with the requisite degree of contemporaneity. They did not describe the event unfolding at the time of the conversation but rather recited what Grimes and Johnson had done several hours earlier. They constituted, in other words, the narrative of a past occurrence. It therefore follows that Lt. Stallings's two reports, at least to the extent of their recitation or summary of Grimes's statements, were also inadmissible. See *Aetna Casualty & Surety v. Kuhl,* 296 Md. 446, 454, 463 A.2d 822 (1983) and cases cited therein. As no complaint is made in this appeal about the exclusion of a testimonial opinion by Lt. Stallings, we have no occasion to consider that question. We are left, then, with whether Lt. Klasmeier should have been allowed to give *his* opinion as to the origin and cause of the fire when that opinion was necessarily, and concededly, based principally on the inadmissible statements of Grimes and the inadmissible reports of Lt. Stallings. The answer, we think, is "no."

It is true that, in forming and expressing an opinion, an expert may, to some extent, rely on reports or other hearsay statements made by others if they are of a type reasonably relied on by experts in their field. *Consol. Mech. Contractors v. Ball,* 263 Md. 328, 283 A.2d 154 (1971); *Ellsworth v. Sherne Lingerie, Inc.,* 303 Md. 581, 495 A.2d 348 (1985). But there is a limit to that reliance. As Professor McLain notes, *supra,* § 703.1, "a close analysis of the cases shows that the courts have required ... that the basis for expert opinion be sufficiently trustworthy to be reliable and that the opinion have probative value of its own." If, in fact, the predominant basis for the opinion is information that the law deems unreliable, the opinion loses much, if not all, of its probative value, for it then essentially regurgitates the underlying untrustworthy information.

As we indicated earlier, absent Lt. Klasmeier's opinion, there was clearly insufficient evidence to establish the origin or cause of the fire. That left, or should have left, appellant in the position of having a fire of unknown cause

without any direct evidence of negligence on the part of appellee. *Compare Underwriters v. Beckley,* 173 Md. 202, 195 A. 550 (1937) *and O'Doherty v. Catonsville P. & H. Co.,* 262 Md. 646, 278 A.2d 557 (1971).

■ The issue then becomes whether appellant was entitled to rely on inferred negligence—the "doctrine" of *res ipsa loquitur.* We believe that it was not so entitled. As the court's instructions stated and as the law requires, the inference of negligence sought by appellant under this theory requires that the event/injury be of a nature that would not ordinarily occur in the absence of negligence and that the instrument causing the event/injury be within the exclusive control of appellee. Absent Lt. Klasmeier's opinion, there was no evidence of either of these conditions. Fires can start without negligence; the only admissible evidence as to the instrument that may have caused the fire—the torch—showed that it was in an "off" position when found.

For these reasons, we conclude that the court was correct in granting the motion for judgment NOV. We therefore do not have to address appellant's complaint regarding its excluded evidence bearing on damages.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.