622 A.2d 805

John **BRISCOE**

v.

Annita **GRAYBEAL, et al.**

**No. 1168, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

April 6, 1993.

Thomas Fortune Fay, Washington, DC, for appellant.

Thomas R. Mooers (Montedonico, Hamilton & Altman, P.C. on the brief), Washington, DC, for appellee, Pritchard.

Edward J. Brown (McCarthy, Wilson & Ethridge on the brief), Rockville, for appellee, Graybeal.

Argued before MOYLAN, FISCHER and MOTZ, JJ.

FISCHER, Judge.

 In this case, we are asked to decide whether the owner of a thoroughbred horse is strictly liable for injuries that resulted after the horse fled its pasture. John Briscoe, appellant, filed suit in the Circuit Court for Calvert County for injuries he sustained when his vehicle struck a horse that had apparently escaped from its pasture during an electrical storm. Briscoe sought damages from Annita Graybeal, owner of the mare named Copernicus, and from Denzil Pritchard, owner of the farm where Copernicus was temporarily boarded. Briscoe originally alleged negligence and strict liability, but he subsequently elected to proceed only on the strict liability count. Following the entry of summary judgment in favor of Graybeal and Pritchard, Briscoe appealed and asks us to decide "[w]hether physical injury which results to an innocent plaintiff from the inherent nature of a thoroughbred horse makes the owner of the animal strictly liable."

The facts giving rise to this issue transpired on July 15, 1990 when Graybeal took Copernicus to Pritchard's farm in Calvert County. Graybeal had agreed to allow Pritchard, the former owner of Copernicus, to pasture-breed the mare with Pritchard's stallion, Great Classic. (Pasture-breeding occurs when two horses are isolated in a field for purposes of breeding.) As a result, the two horses were placed in a fence-enclosed portion of the Pritchard farm.

On the evening of July 15, a severe electrical storm occurred. At approximately 11:00 p.m., thunder and lightning apparently "spooked" Copernicus, who charged through the fence. The horse ran into the northbound lanes of Route 4 near the intersection of Brickhouse Road and was struck by a car. Shortly thereafter, Briscoe approached the scene. He observed a disabled car partially in the right lane, so he moved into the left lane. Briscoe was, however, unable to see the horse lying in the road until it was too late to avoid a collision. Briscoe's vehicle struck

Copernicus, became airborne, crossed the grass median, and came to rest in the southbound lanes of Route 4. Briscoe was transported to Calvert County Hospital and was subsequently transferred to the Shock Trauma Unit at Washington Hospital Center. He filed this suit to recover for his injuries.

Briscoe argues that the application of strict liability in this case is rooted in the common law. In support of his position, Briscoe directs our attention to the following passage from Prosser, *The Law of Torts*, at 496 (4th ed. 1971), "[I]t remains the common law in most jurisdictions that the keeper of animals of a kind likely to roam and do damage is strictly liable for their trespasses." Briscoe contends that the appellate courts in Maryland have not decided this issue, and he urges us to adopt "the Common Law Rule with regard to strict liability for the damages caused by horses...."

■ Despite Briscoe's assertion to the contrary, the issue of strict liability with respect to horses has been considered by this Court. *Pahanish v. Western Trails Inc.*, 69 Md. App. 342, 517 A.2d 1122 (1986), involved injuries sustained when the patron of a riding stable was thrown from a horse that he had rented. With regard to liability, we stated:

> Under Maryland law, the owner of a **domestic animal** may be liable under two separate theories of liability for injuries caused by his animal—strict liability or negligence. *Slack v. Villari*, 59 Md.App. 462, 476 A.2d 227, *cert. denied*, 301 Md. 177, 482 A.2d 502 (1984). In order to hold an animal owner strictly liable for injuries caused by his animal, a plaintiff must demonstrate the owner knew or, with reasonable care, should have known that the animal had a propensity to commit the particular type of mischief that was the cause of harm. *Finneran v. Wood*, 249 Md. 643, 648, 241 A.2d 579 (1968); *Herbert v. Ziegler*, 216 Md. 212, 216, 139 A.2d 699 (1958), *Twiff v. Ryland*, 62 Md. 380, 386 (1884); *Slack, supra*, 59 Md. App. at 470 A.2d 227.

*Pahanish,* 69 Md.App. at 356, 517 A.2d 1122 (emphasis added). In *Pahanish* we decided, albeit implicitly, that a horse is a domestic animal. To put to rest any lingering doubts, we now expressly hold that a horse is a domestic animal.[1]

We also concluded in Pahanish that there existed no basis for strict liability because the evidence contained "no reference to the animals themselves or to their particular propensities...." *Pahanish,* 69 Md.App. at 357, 517 A.2d 1122. In reaching this conclusion, we distinguished the facts in *Pahanish* from those in *Herbert v. Ziegler,* 216 Md. 212, 139 A.2d 699 (1958). *Herbert* was an appeal by the owner of a riding academy from the entry of judgment holding him liable for the injury sustained by one of his patrons. As the patron mounted a horse, Herbert's dog ran, growling and barking, toward the horse. The horse bolted to the left, and the patron was thrown to the ground. The patron landed on his back and was dragged several feet. At the time of the accident, one of Herbert's employees, who had observed what occurred, stated that the dog had frightened the horse "again." The Court of Appeals ruled that the jury could have found, from the employee's statement, that whenever the dog ran toward the horse, the otherwise gentle horse became frightened and shied. "The use of the word 'again' clearly permitted the inference that one or more similar occurrences had happened before.... The statement showed the knowledge ... as to the propensities of [the horse]...." *Herbert,* 216 Md. at 217, 139 A.2d 699.

By contrast, there is no evidence in the case now before us that Copernicus had ever displayed a propensity to escape from her pasture. The horse had previously been kept at the Pritchard's farm and had never demonstrated an inclination to be "spooked" by lightning such that she would break through the pasture fence. The mere fact that Copernicus was a thoroughbred was insufficient to charge

---

1. Of course, our holding does not extend to horses like the "wild ponies" of Assateague Island.

the appellees with knowledge of the propensity in question based solely on the breed of the animal. *Slack v. Villari,* 59 Md.App. 462, 476, 476 A.2d 227 *cert. denied,* 301 Md. 177, 482 A.2d 502 (1984) ("[T]he mere fact that the dog that injures a plaintiff belongs to a breed with an unsavory reputation, absent evidence that the particular dog was of a violent nature, is insufficient to prove scienter.... The fact that Gideon was a Doberman pinscher, standing alone, will not be considered a substitute for proof that this particular pinscher was of an obstreperous or violent nature.") (Emphasis in original.) In the absence of any indication that Copernicus bore the propensity to escape from her pasture, the court properly entered judgment in favor of Graybeal and Pritchard.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.