673 A.2d 721

GUNPOWDER HORSE STABLES, INC.

v.

STATE FARM AUTOMOBILE INSURANCE
COMPANY, etc. et al.

No. 1726, Sept. Term 1995.

Court of Special Appeals of Maryland.

March 27, 1996.

Darlene A. Wakefield, Baltimore, for Appellant.

Gregory S. Fanshaw (John Addison Howard and Simmons & Fields, P.A., on the brief), Baltimore, for Appellees.

Argued before CATHELL, SALMON and EYLER, JJ.

EYLER, Judge.

A traffic collision between Gillian Pleines, appellee, a motorist, and two horses belonging to Gunpowder Horse Stables, Inc., appellant, provided the fodder for this expedited appeal.[1] The Agreed Statement of Facts and Statement of the Case are as follows:

## STATEMENT OF FACTS

On November 4, 1990, Gillian Leigh Pleines, [hereinafter 'Pleines',] was lawfully operating a motor vehicle in a northerly direction on Philadelphia Road near Jones Road in

---

1. State Farm Automobile Mutual Insurance Company, as Pleines' subrogee, is an appellee in this matter. We shall refer to Pleines and State Farm, respectively, as appellees.

Baltimore County, Maryland when a collision occurred between two (2) horses owned by Gunpowder Horse Stables, Inc., [hereinafter 'Gunpowder'] and the motor vehicle operated by Ms. Pleines.

## STATEMENT OF THE CASE

On November 3, 1993, State Farm Automobile Mutual Insurance Company, as subrogee of Gillian Pleines and Gillian Pleines, individually, filed a four count Complaint against Gunpowder Horse Stables, Inc., hereinafter 'Gunpowder'. Counts I and II alleged negligence on the part of the Gunpowder in allowing the horses to escape their premises. Counts III and IV alleged that the defendant, was statutorily liable for the damages resulting from the collision pursuant to § 6–204, Baltimore County Code. With the Complaint, Plaintiffs filed a demand for jury trial.

Prior to trial, Plaintiffs dismissed the negligence counts and proceeded to trial solely on the counts of statutory liability.

On June 28, 1995, trial was called before the ... [Circuit Court for Baltimore County]. At that time, by agreement of the parties, the jury demand was waived and the case proceeded to ... [a bench trial]. Pleines testified and the estimate of damage to her car and the medical bills and reports of Franklin Square Hospital were admitted by stipulation.

At the close of the evidence, the Court concluded that Gunpowder was liable pursuant to Baltimore County Code, Section 6–204. Owner's Liability, as the owner of the horses which escaped onto the highway. [The circuit court] further opined that Section 6–204 was 'broad enough to encompass the facts of this case' and was in 'effect a strict liability or res ipsa' provision. [The circuit court] entered judgments for the plaintiffs and awarded damages in the amount of $241.49 for past medical expense, $2,500.00 for non economic loss and $5,510.75 for property damage.

A timely appeal was filed on July 28, 1995.

The parties agree on the one issue presented for our decision.

Did the lower court err in entering judgment in favor of appellees on the sole count of statutory liability?

We answer in the affirmative.

The first sentence in Baltimore County Code § 6–204 purports to render animal owners liable for damages caused by their animals to all persons except those committing a trespass or other tort or those teasing, tormenting, or abusing the animal. The second sentence defines persons who are lawfully upon the private property of an animal owner.

If any animal shall do any damage to the body, clothing, or other property of any person, the owner or keeper or, if the owner or keeper be a minor, the parents or guardian of such minor shall be liable for such damages, unless such damages shall have occasioned to the body or clothing of a person who, at that time such was sustained, was committing a trespass or other tort or was teasing, tormenting, or abusing such animal. A person is lawfully upon the private property of such owner within the meaning of this title when he is on such property in the performance of any duty imposed upon him by the laws of the state, county, or by the postal regulations of the United States or when he is on such property upon the invitation, expressed or implied, of the owner thereof.

BALTIMORE COUNTY CODE § 6–204 (1988).

The parties have briefed the issue by breaking it into two sub-issues: first, whether Code § 6–204 applies to injuries caused by animals on private property and not on public highways; second, whether § 6–204 imposes liability absent evidence of owner negligence or knowledge of an animal's dangerous propensities.

With respect to the first sub-issue, appellant argues that § 6–204 applies only to injuries caused by animals on private property, relying on the plain language of the ordinance, its legislative history, and the County Council's intent. Appellees urge that § 6–204 is not limited to injuries caused on private

property, relying on the same bases, but reaching a different conclusion.

With respect to the second sub-issue, appellant argues that, pursuant to Maryland common law, an animal owner may not be held liable for injuries caused by his or her animal, absent some evidence of negligence or knowledge of the animal's propensity to commit the complained of act. Appellees rely on § 6–204's plain language, which they suggest imposes a greater burden on the animal owner than that imposed by the common law.

Whenever called upon to engage in statutory construction, our primary goal is to discern and effectuate the General Assembly's intent. *Oaks v. Connors*, 339 Md. 24, 35, 660 A.2d 423 (1995). Customarily, the canons of construction applicable to statutes also apply to ordinances. *Columbia Road Citizens' Ass'n v. Montgomery County*, 98 Md.App. 695, 702, 635 A.2d 30 (1994). Ordinarily, if the language of an ordinance unambiguously establishes legislative intent, our inquiry stops with the text. *Mayor of Baltimore v. Mano Swartz, Inc.*, 268 Md. 79, 86, 299 A.2d 828 (1973). If, on the other hand, the wording of the ordinance is ambiguous, we consider, among other things, the interplay between the section under scrutiny with the entire statutory scheme and the purpose or purposes behind the section. *Howard Research and Dev. Corp. v. Concerned Citizens*, 297 Md. 357, 364, 466 A.2d 31 (1983). We strive to avoid interpretations that are illogical, unjust, unreasonable, unworkable, and nonsensical. *Reuter v. Reuter*, 102 Md.App. 212, 225, 649 A.2d 24 (1994). We seek, however, to uphold the ordinance and, as circumstances dictate, evaluate " 'external manifestations' or 'persuasive evidence' of a contrary legislative intent." *Department of Gen. Servs. v. Harmans Assocs. Ltd. Partnership*, 98 Md.App. 535, 545, 633 A.2d 939 (1993). We may "reject the mechanical application" of the statute and consider the objectives and purpose of the enactment and the consequences resulting from one construction versus another construction. *Blaine v. Blaine*, 336 Md. 49, 68–69, 646 A.2d 413 (1994). Moreover, the

"circumstances of the enactment of particular legislation may persuade a court that ... [the legislative body] did not intend words of common meaning to have their literal effect." *Kaczorowski v. Mayor of Baltimore,* 309 Md. 505, 514, 525 A.2d 628 (1987), *quoting from Watt v. Alaska,* 451 U.S. 259, 266, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981). Legislative history, previous enactments, and the particular problem that the ordinance addresses are all areas worthy of consideration. *Lemley v. Lemley,* 102 Md.App. 266, 290, 649 A.2d 1119 (1994). The term "shall," used in an ordinance, normally means "must" and, ordinarily, does not allow for the exercise of discretion. *Wyatt v. Johnson,* 103 Md.App. 250, 257–58, 653 A.2d 496 (1995). We construe the ordinance, whenever possible, so as to avoid a constitutional conflict. *Burns v. Mayor of Midland,* 247 Md. 548, 554, 234 A.2d 162 (1967); *Tidewater/Havre de Grace, Inc. v. Mayor of Havre de Grace,* 337 Md. 338, 352, 653 A.2d 468 (1995).

Baltimore County is a charter county pursuant to Article XI–A of the Maryland Constitution, commonly known as the "Home Rule Amendment." BALTIMORE COUNTY CHARTER (1988 & Supp.1995); *see Prince George's County v. Board of Supervisors,* 337 Md. 496, 503, 654 A.2d 1303 (1995). Under Article XI–A, § 2 of the Maryland Constitution, the General Assembly, by public general law, "provide[s] a grant of express powers" to chartered counties. *See Prince George's County,* 337 Md. at 504, 654 A.2d 1303. The Express Powers Act, found in Md.Code Ann. (1957, 1994 Repl.Vol.), Article 25A, implements the mandate of Article XI–A, § 2 of the Constitution. *See Williams v. Anne Arundel County,* 334 Md. 109, 638 A.2d 74 (1994). Section five of Article 25A enumerates the express powers granted to, and conferred by, the General Assembly to a chartered county. In relevant part, that section states:

### (A) *Local Legislation*

To enact local laws for such county, including the power to repeal or amend local laws thereof enacted by the General Assembly upon the matters covered by the express

powers in this article granted; to provide for the enforcement of all ordinances, resolutions, bylaws and regulations adopted under the authority of this article by fines, penalties and imprisonment, enforceable according to law as may be prescribed, but no such fine or penalty shall exceed $1,000 for any offense other than a fair housing law offense or imprisonment for more than six months; to provide for the enforcement of local fair housing laws by fines or penalties that do not exceed the fines or penalties provided in the Federal Fair Housing Act Amendments of 1988 for enforcement of similar federal fair housing laws; to provide for enforcement of all ordinances, resolutions, bylaws, and regulations adopted under the authority of this article by civil fines and penalties.

.        .        .        .        .        .

### (L) *Livestock*

To regulate the conditions under which dogs, cows, sheep, pigs, cattle and livestock of any and every kind may be at large, or may pass over the streets, roads, alleys, lanes, bridges, highways and public places.

.        .        .        .        .

### (S) *Amendment of County Charter*

To pass any ordinance facilitating the amendment of the county charter by vote of the electors of the county and agreeable to Article XI–A of the Constitution.

The foregoing or other enumeration of powers in this article shall not be held to limit the power of the county council, in addition thereto, to pass all ordinances, resolutions or bylaws, not inconsistent with the provisions of this article or the laws of the State, as may be proper in executing and enforcing any of the powers enumerated in this section or elsewhere in this article, as well as such ordinances as may be deemed expedient in maintaining the peace, good government, health and welfare of the county.

Provided, that the powers herein granted shall only be exercised to the extent that the same are not provided for by public general law; provided, however, that no power to

legislate shall be given with reference to licensing, regulating, prohibiting or submitting to local option, the manufacture or sale of malt or spirituous liquors.

Having delegated express powers to a county, the General Assembly is preempted, unless it has withdrawn those powers, from enacting a *public local law*. Art. XI–A, § 4 of the Md.Constitution; *Ritchmount Partnership v. Board of Supervisors*, 283 Md. 48, 57, 388 A.2d 523 (1978).

Baltimore County, in turn, has vested the powers granted to it in its County Council, County Executive, and other agents, officers, and employees that act in its behalf. BALTIMORE COUNTY CHARTER § 102 (1988 & Supp.1995). The County recognizes that the grant of those powers is limited. *Id.* at § 305 ("In the exercise of all its powers, the county council shall be subject to the express limitations imposed by this Charter [of Baltimore County] and by all applicable provisions of the Constitution [of Maryland] and the laws of this state."); *see also Prince George's County*, 337 Md. at 503, 654 A.2d 1303 ("The purpose of Art. XI–A was to authorize counties to adopt a home rule charter, and to vest in such charter counties the authority to enact local legislation within limits to be established by the General Assembly.").[2] Regarding the County Council's legislative authority, the Baltimore County Charter contains the provision that follows.

The county council shall be the elected legislative body of the county and is vested with all the law-making power thereof, including all such powers as may heretofore have been exercised by the General Assembly of Maryland and transferred to the people of the county by the adoption of this Charter. The county council shall also have and may exercise all legislative powers heretofore vested in the county commissioners of Baltimore County, including the power to accept gifts and grants. The county council may enact

---

**2.** *Cf. Ritchmount Partnership*, 283 Md. at 57, 388 A.2d 523 ("Article XI–A does not in and of itself confer *legislative* power upon the counties. Instead it mandates that the General Assembly expressly enumerate and delegate those powers exercisable by counties electing a charter form of government.").

public local laws for the county and is authorized to repeal or amend such local laws as have heretofore been enacted by the General Assembly of Maryland upon matters covered by the Express Powers Act of 1918 (Article 25A of the Annotated Code of Maryland, 1957 Edition) as now in force or hereafter amended. The county council may also provide for the enforcement of all ordinances, resolutions, bylaws and regulations adopted under the authority of law by fines, penalties and imprisonment, within the limits prescribed by law.

BALTIMORE COUNTY CHARTER § 306 (1988).

■ On May 7, 1976, the Baltimore County Council passed bill number 28–76, which became, overlooking insignificant differences in punctuation, what is today § 6–204. LAWS OF BALTIMORE COUNTY § 3–52 (1976). Prior to that date, and going back at least to 1958, the precursors to § 6–204 referred to dogs in particular, as distinguished from animals in general.[3]

(a) If any dog shall do any damage to either the body, clothing or other property of any person, the owner or keeper, or if the owner or keeper be a minor, the parents or guardian of such minor, shall be liable for such damages, unless such damages shall have been occasioned to the body or clothing of a person who, at the time such was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog. A person is lawfully upon the private property of such owner within the meaning of this article when he is on such property in the performance of any duty imposed upon him by the laws of the state, the county or by the postal regulations of the United States of America, or when he is on such property upon the invitation, expressed or implied, of the owner thereof.

(b) The owner of any livestock or poultry injured or killed by any dog may recover as liquidated damages from the

---

**3.** The 1968 Code references § 236 of the 1955 Code and chapter 347, § 200F of the 1955 Laws of Baltimore County; the County Council's holdings do not include that volume or a copy of the original bill.

owner of such dog, devoid of proper legal defenses, twice the actual value of the animals killed or twice the value of damages sustained by reason of such injuries as the case may be. If two or more dogs kept by two or more owners or keepers injure or kill any livestock or poultry at the same time, the owners or keepers of such dogs are jointly and severally liable for such damage.

BALTIMORE COUNTY CODE § 3–22 (1958).

Section 6–204 does not distinguish, for purposes of liability, between an animal that is on, or an animal that is off, the owner's property. Instead, the section's plain language declares that the animal's owner shall be liable for damages caused by the animal. The provisions relating to trespassers and those lawfully on the owner's property merely define classes of protected individuals, and have no bearing on matters relating to the territorial application of § 6–204.

If it so chose, the County Council could have limited the territorial application of § 6–204; it did not. Such matters did not escape the County Council's attention, for in § 6–13 it specified that it is unlawful for animals to be at large.[4]

No owner of any animal shall allow his animal to be at large in the county, with the following exceptions:

(1) Dogs on the premises of another property with the permission of the property owner or lessee; or

(2) Dogs being used for hunting or trained for hunting.

The County Council evidently wanted to create a remedy for parties suffering damages caused by animals. The plain language of § 6–204 supports no other reasonable interpretation. Moreover, in light of the following discussion, a construction limiting the application to private property would not salvage its validity, for it would continue, by its terms, to

---

4. An animal at large is "any animal, other than a dog, off the premises of the owner and not under the control, charge, or possession of the owner or other responsible person." BALTIMORE COUNTY CODE § 6–1 (1988).

impose a form of *absolute or strict liability* upon the offending animal's owner not recognized in State law.

As a charter county, Baltimore County has the power to enact local laws. We turn our attention to whether enactment of § 6–204 was properly within Baltimore County's domain. We begin by discussing the standard of liability created by § 6–204 in relation to Maryland's statutes and common law.

The General Assembly has not enacted statewide legislation that pertains to animals at large and damages caused by those animals.[5]  Consequently, the ordinance is not inconsistent with

---

**5.** Maryland Annotated Code, Article 24, Title 11, Subtitle 5, Regulation of Animals, §§ 11–501 to 11–511 pertains to particular counties and deals primarily with canines. The section most relevant to the present discussion, § 11–511, is limited to Carroll and Frederick Counties, and authorizes those counties to regulate domestic animals and wild animals held in captivity.

(a) *Applicability.*—This section only applies to Carroll County and Frederick County.

(b) *Regulations—Authority.*—In addition to and not in substitution for any powers granted under this article, the county commissioners, by ordinance, may provide for a comprehensive system for the regulation of domestic animals, including dogs, and wild animals held in captivity, within the county, including licensing and control.

(c) *Same—Contents.*—These regulations may include:

(1) Provisions for the impoundment and disposal of unlicensed or dangerous dogs;

(2) Provisions for the regulation of persons who own or keep any animal which disturbs the peace and quiet of a neighborhood, or which is vicious; and

(3) Reasonable penalties for violations of any of the provisions of the regulations, not to exceed imprisonment in the county jail for 30 days or a fine of $500, or both.

(d) *Scope.*—The county commissioners:

(1) May regulate animals that are hybrids of domestic or wild animals; but

(2) May not regulate or control wild animals that are not owned or kept by individuals.

Of the local Maryland jurisdictions that have passed similar legislation authorizing civil and criminal penalties, only Baltimore City and Prince George's County have included provisions for damages. Baltimore City Code Article 11, § 38 is almost identical to Baltimore County Code § 3–22(a) of 1958. The only differences between the sections are one comma and Baltimore City's use of the word "city" in lieu of the word "county." Prince George's County Code Subtitle 3, Subdivision

the public general laws. There is a significant body of applicable common law, however. A horse is a domestic animal, *Briscoe v. Graybeal,* 95 Md.App. 670, 673, 622 A.2d 805 *cert. denied,* 331 Md. 479, 628 A.2d 1066 (1993).[6] Therefore, two alternative theories of liability may be applicable when a horse causes damage: negligence or strict liability. *Slack v. Villari,*

3, § 3–135 holds the offending animal's owner "strictly" liable for damages caused by the animal.

(a) It shall be unlawful for the owner or custodian of any animal, including but not limited to any cattle, horse, mule, swine, sheep, goat, geese, ducks, chickens, dog, cat, or other animal to permit the animal to run at large or be at large as defined in Section 3–101(3) within Prince George's County, Maryland. 'At large' shall also include:

(1) The confinement of [sic] securing of an animal by any person at a location other than on the premises of its owner, custodian, or authorized agent; or

(2) Herding such animal or tying it for grazing in any street or other public place.

(3) The fastening of any horse or other animal on public property to any hydrant, shade tree, or to any box or case around such tree, or to any public ornamental tree on any street or public ground.

(b) Any animal found at large or running at large is declared to be a nuisance and dangerous to the public health, safety and welfare.

(c) The owner of any animal running at large shall be held strictly liable for a violation of this statute, except as provided in paragraphs (f) and (g) of this Section, and for any damages caused by said animal.

. . . . .

(f) This Section shall not apply to an animal under the control of its owner, custodian or an authorized agent of the owner by a leash, cord or chain, or to an animal undergoing obedience training or while actually engaged in the sport of hunting in authorized areas while supervised by a competent person.

(g) No animal running at large by accident with a person in immediate pursuit of it shall be deemed to be at large, running at large or a stray.

PRINCE GEORGE'S COUNTY CODE § 3–135(a), (b), (c), (f), & (g) (1991 & Supp.1994). *See also* ANNE ARUNDEL COUNTY CODE, Article 12, §§ 8–106, 9–101, & 9–102 (1985); CECIL COUNTY CODE §§ 209–6 & 209–15 (1989 & Supp.1995); CHARLES COUNTY CODE §§ 230–12 & 230–12.9 (1994 & Supp.1995); FREDERICK COUNTY CODE §§ 1–5–24 & 1–5–53 (1979 & Supp.1995); ST. MARY'S COUNTY CODE §§ 212–9 & 212–15 (1978). Washington County has enacted an ordinance addressed specifically towards horses at large. WASHINGTON COUNTY CODE § 11–102 (1991).

**6.** The "wild ponies" indigenous to Assateague Island are excluded from this definition. *Briscoe,* 95 Md.App. at 673 n. 1, 622 A.2d 805.

59 Md.App. 462, 470, 476 A.2d 227 *cert. denied,* 301 Md. 177, 482 A.2d 502 (1984).

Judge Getty stated the negligence standard for us in *Hammond v. Robins,* 60 Md.App. 430, 483 A.2d 379 (1984), wherein we were presented with a violation of Carroll County's leash law and the relevance of that violation to tort liability.

All that the law requires to be shown in a negligence claim is that the owner's negligence be the proximate cause of the injury which could reasonably have been anticipated; it is not necessary to have foreseen the particular injury which did happen, or the exact manner in which the injury occurred.

*Id.* at 436, 483 A.2d 379. In *Pahanish v. Western Trails, Inc.,* 69 Md.App. 342, 356, 517 A.2d 1122 (1986), a case involving injuries sustained by appellant as he was horseback riding, Judge Bloom recited the elements of strict liability.

In order to hold an animal owner strictly liable for injuries caused by his animal, a plaintiff must demonstrate the owner knew or, with reasonable care, should have known that the animal had a propensity to commit the particular type of mischief that was the cause of harm.

The owner of a *wild* animal may be held liable in certain jurisdictions under a third theory: absolute liability. Although there are no reported Maryland cases discussing this theory, its elements are relevant to the facts of the instant case because § 6–204 purports to impose liability upon the offending animal's owner without regard to his or her knowledge of the animal's propensity for causing harm. As stated in American Jurisprudence:

One who harbors a wild animal, which by its very nature is vicious and unpredictable, does so at his peril, and liability for injuries inflicted by such an animal is absolute. Nor can such liability be avoided on the theory of lack of notice of the vicious nature of the animal, for such notice is conclusively presumed. Under the rule of absolute liability, even though a person is licensed to keep and exhibit a wild

animal, he assumes the obligation of an insurer to the public, generally, and as such keeps it at his peril. An exception to the doctrine of absolute liability is recognized where wild animals are kept for the education and entertainment of the public by an institution which holds a charter from the legislature for that purpose; in such a case recovery cannot be had unless negligence is established.

4 AM.JUR.2D *Animals* § 91 (1995) (footnotes omitted). Animals giving rise to absolute liability by their owners include "wild beasts or dangerous animals, such as lions, tigers, bears, wolves, elephants and the like...." *Wenndt v. Latare,* 200 N.W.2d 862, 869 (Iowa 1972).

Baltimore County Code § 6–204 purports to impose a form of *absolute* liability with certain exceptions. The owner's knowledge of the animal's propensities or his or her negligence are not necessary to establish liability. The burden of proof, under § 6–204, is less rigorous than under common law negligence or strict liability. In sum, § 6–204 creates an alternative and new cause of action.

Resort to the law of other jurisdictions supports the last assertion. In Ohio, a suit for damages resulting from a dog bite may be instituted under either common law or statute. *Flint v. Holbrook,* 80 Ohio App.3d 21, 608 N.E.2d 809, 812 (1992). The Ohio statute is similar to Baltimore County Code § 6–204. The relevant portion of the 1995 version of that statute reads as follows:

(B) The owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog, unless the injury, death, or loss was caused to the person or property of an individual who, at the time, was committing or attempting to commit a trespass or other criminal offense on the property of the owner, keeper, or harborer, or was committing or attempting to commit a criminal offense against any person, or was teasing, tormenting, or abusing the dog on the owner's, keeper's, or harborer's property.

OHIO REV.CODE ANN. § 955.28(B) (Anderson 1995). Ohio courts have interpreted § 955.28(B)'s precursors as creating absolute liability upon the animal owner. *Warner v. Wolfe,* 176 Ohio St. 389, 199 N.E.2d 860, 862 (1964). Those same courts have interpreted the current statute, although it is substantially similar to its precursors, in terms of strict liability. *Quellos v. Quellos,* 96 Ohio App.3d 31, 643 N.E.2d 1173, 1177, *cert. denied,* 71 Ohio St.3d 1412, 641 N.E.2d 1111 (1994). Before liability may be imposed in Ohio, under the statute, the issues to be determined are (1) ownership or keepership of the animal, (2) whether the animal's actions were the proximate cause of the damage, and (3) the monetary amount of the damage. *Flint,* 608 N.E.2d at 812.

Even closer to Baltimore County Code § 6–204 is Chapter 140, § 155 of the Annotated Laws of Massachusetts.

> If any dog shall do any damage to either the body or property of any person, the owner or keeper, or if the owner or keeper by a minor, the parent or guardian of such minor, shall be liable for such damage, unless such damage shall have been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog. If a minor, on whose behalf an action under this section is brought, is under seven years of age at the time the damage was done, it shall be presumed that such minor was not committing a trespass or other tort, or teasing, tormenting or abusing such dog, and the burden of proof thereof shall be upon the defendant in such action.

MASS.ANN.LAWS ch. 140, § 155 (Law.Co-op. 1995). Massachusetts courts recognize that § 155 and its precursors have "create[d] a new and different cause of action," which is separate and distinct from an action under the common law. *Canavan v. George,* 292 Mass. 245, 198 N.E. 270, 271 (1935). The animal owner's negligence or his or her knowledge of the animal's dangerous propensities is immaterial to the question of liability.

> Proof that the owner or keeper of a dog causing personal injury was negligent, or otherwise at fault, or knew, or had

reason to know, that the dog had any extraordinary, dangerous propensity, or even proof that the dog in fact had any propensity, is not essential to recovery of damages under the statute.

*Id.*

We now examine whether Baltimore County can, by ordinance, create a private cause of action.[7] Generally, under Maryland law, violation of an ordinance that does not create a cause of action constitutes evidence of negligence, and does not constitute negligence *per se*. *Slack*, 59 Md.App. at 470, 476 A.2d 227. As Judge Weant pointed out,

> [i]n order for the violation of a statute [or ordinance] to be evidence of negligence, that violation must result in an injury to a member of the class the statute [or ordinance] was designed to protect and the injury sustained must be the type which the statute [or ordinance] was intended to prevent.

*Id.* at 471, 476 A.2d 227.

As noted in the constitutional grant of express powers discussion, *supra* at pages 618–620, the Baltimore County Council's legislative authority is derived solely from the General Assembly. The ordinance is not inconsistent with the public general laws in that the legislature has not enacted a statewide animal liability provision. Additionally, Article 25A, § 5(L), allows a county to regulate "the conditions under which dogs, cows, sheep, pigs, cattle and livestock of any and every kind may be at large, or may pass over the streets, roads, alleys, lanes, bridges, highways and public places." Section 5(A)(2) and (5) provide, however, the "stick" with

---

7. At trial as well as here, appellant argued that liability could not be imposed absent evidence of the animal owner's negligence or knowledge of the animal's dangerous propensities. Appellant did not argue, however, that Baltimore County's attempt to impose a form of *absolute or strict liability* was not within the power granted to it by the General Assembly. Our discussion of the County's legislative power is necessary in order to answer the issue presented. Compare *County Council v. Offen*, 334 Md. 499, 509–511, 639 A.2d 1070 (1994).

which a county may enforce its ordinances, resolutions, by-laws, and regulations.

(2) To provide for the enforcement of all ordinances, resolutions, bylaws and regulations adopted under the authority of this article by fines, penalties and imprisonment, enforceable according to law as may be prescribed. A penalty may not exceed $1,000 for any offense, unless otherwise authorized in this subsection, or provide for imprisonment for more than six months.

.       .       .       .       .       .

(5) To provide for enforcement of all ordinances, resolutions, bylaws, and regulations adopted under the authority of this article by civil fines and penalties.

In neither provision does the General Assembly authorize a county to create a private cause of action. Enforcement is limited to civil fines, penalties, and imprisonment.

In *Montgomery Citizens League v. Greenhalgh,* 253 Md. 151, 252 A.2d 242 (1969), the Court of Appeals reviewed three allegations of error concerning the Circuit Court for Montgomery County's ruling on a Montgomery County Council's fair housing bill. The Court considered whether the subject matter was one upon which the General Assembly had granted to the County Council authority to legislate. *Id.* at 160, 252 A.2d 242. The Court examined the fair housing bill in relation to the boundaries imposed by Maryland Constitution Article 25A, the laws of the State, public general law, and malt or spirituous liquor laws, and concluded that the bill fell within the confines created by those checks. *Id.* The fair housing bill did not create a new cause of action, but rather established

enforcement procedures such as the receipt and investigation of complaints by the executive secretary of the Human Relations Commission and the hearing and disposition of such complaints by the three members of the Commission's Panel on Housing appointed by the Council.

*Id.* at 154, 252 A.2d 242.

The Court of Appeals reviewed another challenge to the Montgomery County Council's legislative authority in *County*

*Council v. Investors Funding Corp.*, 270 Md. 403, 312 A.2d 225 (1973). The debate centered around Montgomery County's "Fair Landlord–Tenant Relations" ordinance, which the County Council enacted to regulate "the apartment rental business and its concomitant landlord-tenant relationships and activities in Montgomery County." *Id.* at 406, 312 A.2d 225. Although the Court invalidated portions of the ordinance, *see id.* at 419–25, 312 A.2d 225, it held that the County Council had the power to enact an ordinance in derogation of the common law because it acted within the authority granted to it by Maryland Constitutional Article XI–A and the Express Powers Act. *Id.* at 419, 312 A.2d 225. The County Council created a Commission on Landlord–Tenant Affairs and authorized it to enforce the ordinance. *Id.* at 408, 312 A.2d 225. The Court commented on that grant of authority:

> We think the grant of remedial powers to the Commission to award money damages, terminate leases, order repairs and the return of security deposits and rental monies paid, and to award funds for temporary substitute housing does not constitute an invalid delegation of judicial power to an administrative agency in violation of the Maryland Constitution. As to the granting of these powers, we are in full agreement with the Council's observation that '(T)he pivotal point in determining the permissible extent of delegable adjudicatory functions is not merely their inherent nature but the context of the regulatory scheme and the enforcement procedure provided by the administrative process.' We think it plain that the function of the Commission is primarily administrative and the power vested in it to hear and determine controversies involving landlords and tenants is granted only as an incident to its administrative duty; in other words, the Commission's function is not primarily to decide questions of legal rights between private parties, but is merely incidental, although reasonably necessary, to its regulatory powers.

*Id.* at 440–41, 312 A.2d 225.[8]   Like *Greenhalgh* before it, *Investors Funding* did not involve a new cause of action.

In 1990, the Court of Appeals decided *McCrory Corp. v. Fowler*, 319 Md. 12, 570 A.2d 834 (1990).   In *McCrory*, Judge Eldridge, writing for the Court, held that a Montgomery County ordinance that created a new private cause of action was not a "local law" pursuant to Article XI–A of the Maryland Constitution, and accordingly, was beyond the County's legislative power.   *Id.* 319 Md. at 24, 570 A.2d 834.   According to Judge Eldridge, judicial examination begins with whether the county ordinance is a "local law."   In *Dasch v. Jackson*, 170 Md. 251, 260, 183 A. 534 (1936), Judge Offutt enunciated a formulation for the term "local law."

> Any complete or final definition of the term 'local law' is, because of the varying meanings attached to it, considered in reference to its geographical extent and the classification of the objects to which it applies, difficult to formulate, and perhaps more difficult to apply with any proper degree of uniformity or certainty.   A law may be local in the sense that it operates only within a limited area, but general in so far as it affects the rights of persons without the area to carry on a business or to do the work incident to a trade, profession, or other calling within the area.   It may also be general in the sense that it affects some matter in which the people of the whole legislative jurisdiction may be interested, such as the general revenue, but local in the sense that it imposes burdens on property, business, or transactions only within a limited area.

As summarized in *Cole v. Secretary*, 249 Md. 425, 435, 240 A.2d 272 (1968),

> [i]n subject matter and substance ... a law which is confined in its operation to prescribed territorial limits, [and]

---

**8.**   The Court invalidated another portion of the ordinance wherein the County Council vested discretion in the Commission "to fix the amount of the [civil monetary] penalty in any amount up to $1,000, for any violation of the Act" because of the "total absence of any legislative safeguards or standards to guide it in exercising its discretion...."   *Id.* 270 Md. at 441, 312 A.2d 225.

equally applicable to all persons within such limits[, is a local law]. It is thus readily distinguishable from a general law, which deals with the general public welfare, a subject which is of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state.

The section of the Montgomery County Code under attack in *McCrory* authorized "a private citizen to seek redress for another private citizen's violation of a county anti-employment discrimination ordinance by instituting a judicial action in the Courts of the State for, *inter alia*, unlimited money damages." *McCrory*, 319 Md. at 19, 570 A.2d 834. The Court declared that in Maryland, "the creation of new causes of action in the courts has traditionally been done either by the General Assembly or by this Court under its authority to the modify the common law of this State." *Id.* at 20, 570 A.2d 834. The Court went on to add that "the creation of new judicial remedies has traditionally been done on a statewide basis." *Id.* Because, the Court reasoned, employment discrimination was a statewide problem, the county anti-discrimination ordinance "affect[ed] 'matters of significant interest to the entire state' and c[ould not] qualify as a 'local law' under Article XI–A." *Id.*

Judge Eldridge pondered the potential consequences of reaching a different result:

A contrary holding would open the door for counties to enact a variety of laws in areas which have heretofore been viewed as the exclusive province of the General Assembly and the Court of Appeals. For example, could a county ordinance authorize in the circuit court and the District Court negligence actions in which contributory negligence would not be a bar? Could a county ordinance provide for breach of contract suits upon 'contracts' not supported by consideration, or where the parol evidence rule is inapplicable? We believe the answer is 'no.' These, and many other legal doctrines, are matters of significant interest to the

entire State, calling for uniform application in state courts. They are not proper subject matters for 'local laws.'

*Id.* at 20–21, 570 A.2d 834.

We do not call into question Baltimore County's authority to regulate animals and matters related to their presence within its borders pursuant to Article XI–A and the Express Powers Act. As *McCrory* unequivocally states, however, a county may not create a new cause of action between private parties concerning matters of statewide concern.

The common law of Maryland recognizes only two causes of action against an owner of a domestic animal: negligence and strict liability. Unlike the Ohio and Massachusetts statutes noted previously, § 6–204 was not enacted by the State's legislative body. If we were to uphold § 6–204, we would be placing our imprimatur on a theory of liability not recognized by the General Assembly or the common law. Additionally, it would be a theory of liability selectively and rarely imposed. In light of *McCrory*'s holding, and the other legal principles discussed above, we are unwilling to take that position, and accordingly, must invalidate § 6–204 as not being a "local law" under Article XI–A of the Maryland Constitution.

JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEES.