894 So.2d 20 (2004)
ARAMARK UNIFORM AND CAREER APPAREL, INC., et al., Petitioners,
v.
Samuel EASTON, Jr., Respondent.
No. SC02-2190.
Supreme Court of Florida.
October 7, 2004.
Rehearing Denied February 8, 2005.
*21 Vincent J. Profaci, Altamonte Springs, FL, for Petitioner.
Deborah D. Walters of The Walters Law Firm, Jacksonville, FL, for Respondent.
CANTERO, J.
We must decide whether a statute that allows suits for damages resulting from pollution creates a cause of action imposing liability without proof that the defendant caused the pollution, or merely modifies existing common law causes of action, which require proof of causation. In the decision below, the First District Court of Appeal held that the statute creates a cause of action for strict liability. See Easton v. Aramark Unif. & Career Apparel, Inc., 825 So.2d 996 (Fla. 1st DCA 2002). Its holding expressly and directly conflicts with Mostoufi v. Presto Food Stores, Inc., 618 So.2d 1372, 1376-77 (Fla. 2d DCA 1993), which held it did not. We accepted jurisdiction to resolve the conflict. See art. V, § 3(b)(3), Fla. Const. For reasons we explain below, we hold that the statute does create a strict liability cause of action for damages. We therefore approve the First District Court of Appeal's decision and disapprove Mostoufi to the extent it is inconsistent with this opinion.

I. FACTS
Aramark sells and rents uniforms. In 1986, it acquired Servisco in a transaction that included twenty sites, at least twelve of which  including one adjacent to respondent Samuel Easton, Jr.'s property  were later classified as contaminated. As part of the transaction, Aramark assumed Servisco's liabilities and began the assessment and remediation of the various contaminated sites. In 1990, Aramark executed a consent order with the Florida Department of Environmental Protection ("DEP") that, among other things, required Aramark to remediate the contamination in the groundwater under Easton's property.
In 1996, Easton learned that pollution from Aramark's adjacent property was contaminating his property. Chemical solvents on Aramark's property had seeped into the groundwater and then migrated onto Easton's. Those chemical solvents continue to contaminate Easton's soil and groundwater and will do so for several years. Remediation efforts could take as long as thirty years. While the pollution poses no significant health risks to humans, building occupants on Easton's property inhale vapors from the contaminated *22 groundwater and must avoid contact with the groundwater.
Easton sought damages and injunctive relief from Aramark for the prior and ongoing migration of contaminated groundwater onto his property. He asserted various common law theories (reckless or negligent endangerment/failure to warn, strict liability, trespass, private nuisance, and negligence), as well as a claim under section 376.313(3), Florida Statutes (2002).
The trial court held a bench trial. The court recognized that contamination of Easton's property had diminished its value by $153,000. It concluded, however, that Easton had failed to prove that either Aramark or Servisco had caused the contamination, and thus entered judgment in Aramark's favor.
On appeal, the First District Court of Appeal reversed, holding that section 376.313(3) created a cause of action for strict liability against an adjoining landowner and did not require proof that the defendant had caused the contamination. See Easton, 825 So.2d at 998. The court relied on two other cases holding that section 376.313 creates a cause of action. See Cunningham v. Anchor Hocking Corp., 558 So.2d 93, 98-99 (Fla. 1st DCA) (holding that the allegations in the complaint stated a cause of action under section 376.313), review denied, 574 So.2d 139 (Fla.1990); Kaplan v. Peterson, 674 So.2d 201, 205 (Fla. 5th DCA 1996) (holding that section 376.313(3) creates a cause of action), review dismissed, 687 So.2d 1305 (Fla.1997). Both the First District in Easton and the Fifth District in Kaplan acknowledged conflict with Mostoufi. See Easton, 825 So.2d at 998; Kaplan, 674 So.2d at 206.

II. ANALYSIS
The statute at issue is found within sections 376.30-376.319, Florida Statutes (2002), originally enacted as part of the Water Quality Assurance Act of 1983. See Ch. 83-310, Laws of Fla. These particular statutes comprise a comprehensive statutory scheme designed to protect Florida's surface and groundwaters. Among their many provisions, they prohibit the discharge of "pollutants or hazardous waste substances into or upon the surface or groundwaters of the state or lands," see § 376.302(1)(a), Fla. Stat. (2002); grant authority to the DEP to implement rules regulating facilities that store hazardous materials or pollutants, § 376.303, Fla. Stat. (2002); and create funds and programs designed to facilitate the restoration of contaminated sites, see, e.g., § 376.3071(3), Fla. Stat. (2002). The statutory scheme provides for both civil and criminal penalties. See § 376.302(2)-(3), Fla. Stat. (2002).
Section 376.308 authorizes the DEP to sue polluters and force the cleanup of contaminated sites. Section 376.313, entitled "Nonexclusiveness of remedies and individual cause of action for damages under ss. 376.30-376.319," allows private parties to sue for damages "resulting from a discharge or other condition of pollution covered by ss. 376.30-376.319." § 376.313(3). Section 376.313(3) establishes the parameters of a private suit for damages. That subsection states in full:
Nothwithstanding any other provision of law, nothing contained in ss. 376.30-376.319 prohibits any person from bringing a cause of action in a court of competent jurisdiction for all damages resulting from a discharge or other condition of pollution covered by ss. 376.30-376.319. Nothing in this chapter shall prohibit or diminish a party's right to contribution from other parties jointly or severally liable for a prohibited discharge of pollutants or hazardous substances or other pollution conditions. *23 Except as otherwise provided in subsection (4) or subsection (5), in any such suit, it is not necessary for such person to plead or prove negligence in any form or manner. Such person need only plead and prove the fact of the prohibited discharge or other pollutive condition and that it has occurred. The only defenses to such cause of action shall be those specified in s. 376.308.
The issue we must resolve is whether section 376.313(3) creates a cause of action or merely modifies existing causes of action by dispensing with the standard of care (negligence) requirement. If it creates a cause of action, a defendant can be held liable even without proof that it caused the pollutive discharge.
As explained below, we conclude that the statute creates a new cause of action and does not merely modify existing ones. We analyze (A) the precise cause of action the statute authorizes; (B) the limited defenses the statute allows; and (C) other evidence in the statute itself that it intends to create a cause of action. Finally, in section (D), we address Aramark's arguments for a contrary interpretation.

A. The Cause of Action Provided Under Section 376.313(3)
This case presents an issue of statutory interpretation. The construction of a statute is an issue of law subject to de novo review. See State v. Glatzmayer, 789 So.2d 297, 301-02 (Fla.2001).
Several principles of statutory interpretation guide our analysis. Whether a violation of a statute can serve as the basis for a private cause of action is a question of legislative intent. See Baumstein v. Sunrise Cmty., Inc., 738 So.2d 420, 421 (Fla. 3d DCA 1999); see also Nettles v. State, 850 So.2d 487, 493 (Fla.2003) (noting that legislative intent is the "polestar that guides the court's inquiry"). Courts must determine legislative intent from the plain meaning of the statute. State v. Dugan, 685 So.2d 1210, 1212 (Fla.1996). As to this statute, the legislature's expressed intent is that "[s]ections 376.30-376.319 ... shall be liberally construed to effect the purposes set forth under ss. 376.30-376.319 and the Federal Water Pollution Control Act, as amended." § 376.315, Fla. Stat. (2002). We therefore interpret the statute with that directive in mind.
A statute creates a new cause of action if it provides a remedy unavailable under the common law. See Fla. E. Coast Ry. Co. v. McRoberts, 111 Fla. 278, 149 So. 631, 632 (1933); see also Gunpowder Horse Stables, Inc. v. State Farm Auto. Ins. Co., 108 Md.App. 612, 673 A.2d 721, 728 (Spec.App.1996) (holding that the statute at issue created a new cause of action because the burden of proof needed under the statute was less rigorous than the common law burden). Under the common law, a landowner whose land is damaged by pollution from an adjoining landowner can assert various claims. See Davey Compressor Co. v. City of Delray Beach, 639 So.2d 595 (Fla.1994) (asserting trespass, negligence, and nuisance against adjoining landowner); Bunyak v. Clyde J. Yancey & Sons Dairy, Inc., 438 So.2d 891 (Fla. 2d DCA 1983) (asserting strict liability for hazardous or abnormally dangerous use of land, nuisance, and negligence against adjoining landowner). Each of these claims, however, requires proof that the defendant caused the pollution resulting in the damages. See, e.g., Durrance v. Sanders, 329 So.2d 26, 29 (Fla. 1st DCA 1976) (noting that a plaintiff in a nuisance action must demonstrate that the nuisance was the natural and proximate cause of the injury); Cunningham v. Gen. Motors Corp., 561 So.2d 656, 659 (Fla. 1st DCA 1990) (stating *24 that strict liability in tort requires the product's user to establish the existence of proximate causal connection between the condition of the manufacturer's product and his injuries or damages). In contrast, section 376.313(3) provides, with exceptions not relevant here, that "in any such suit, it is not necessary for such person to plead or prove negligence in any form or manner. Such person need only plead and prove the fact of the prohibited discharge or other pollutive condition and that it has occurred."
On its face, therefore, section 376.313(3) departs from the common law by creating a damages remedy for the non-negligent discharge of pollution without proof that the defendant caused it. The only proof required is "the fact of the prohibited discharge or other pollutive condition and that it has occurred."
The absence of a causation requirement in the statute cannot be viewed as a legislative oversight. In other statutes within the same scheme (sections 376.30-376.319), where the Legislature wanted to hold a party responsible only if it actually caused the contamination, it so provided. See § 376.308(1)(a), Fla. Stat. (2002) (allowing the DEP to sue "[a]ny person who caused a discharge or other polluting condition") (emphasis added); see also State v. Bradford, 787 So.2d 811, 819 (Fla.2001) (noting that under "well-settled principles of statutory construction, this Court has held that `[t]he legislative use of different terms in different portions of the same statute is strong evidence that different meanings were intended'"). Therefore, we must assume that the omission of a causation requirement in section 376.313(3) was deliberate. We believe this sufficient evidence in itself that the statute creates a new cause of action. But there is more.

B. The Defenses Available Under Section 376.313(3)
The statute's enumeration of specific and exclusive defenses provides further evidence that the Legislature intended to create a cause of action rather than to modify existing ones. The last sentence of section 376.313(3) states that "[t]he only defenses to such cause of action shall be those specified in s. 376.308." The phrase "such cause of action" obviously refers to the cause of action created in the preceding sentences. The statute then lists the only defenses allowed to the new cause of action  those specifically listed in section 376.308.
The defenses available under the statute allow defendants in certain circumstances to avoid liability if they can prove they did not cause or know about the pollution. The "innocent purchaser defense," detailed in section 376.308(1)(c), protects a purchaser of contaminated petroleum and drycleaning sites if the purchaser can show: (1) that it acquired title to property contaminated by the activities of a previous owner, operator, or third party; (2) that it did not cause or contribute to the discharge; and (3) that it did not know of the polluting condition at the time it acquired title.
Because the innocent purchaser defense is limited to petroleum and drycleaning sites, purchasers of other contaminated sites remain liable unless they fall within one of the other defenses listed in section 376.308. Of these, the "third party defense" allows defendants to escape liability if they can show that a third party's act or omission caused the contamination. See § 376.308(2)(d), Fla. Stat. (2002). The third party must be someone "other than an employee or agent of the defendant or other than one whose act or omission occurs in connection with a contractual relationship existing, directly or indirectly, *25 with the defendant." Id.[1]
The Legislature's creation of the innocent purchaser and third party defenses demonstrates that it intended to place the burden on the owners of polluting property to prove they did not cause the pollution, rather than require innocent victims of pollution to prove they did. Such defenses would be superfluous if a plaintiff had to prove, as part of the cause of action, that the defendant caused the contamination. See Acosta v. Richter, 671 So.2d 149, 153-54 (Fla.1996) (stating that a statute should be interpreted to give effect to all of its provisions).
The apparent purpose of section 376.313(3) is to make it easier for victims of pollution to recover for damages resulting from a pollutive discharge or conditions of pollution. To that end, the Legislature placed the burden on the owners of contaminated property to affirmatively prove their lack of involvement with, and knowledge of, the pollution, or to avail themselves of another affirmative defense. As between the owner of contaminated property and a victim of pollution, the current owner is in a superior position to protect itself through pre-purchase due diligence and negotiation of indemnities with the seller. Prospective purchasers of contaminated property also have recourse to an entire industry providing pre-acquisition environmental audits and environmental insurance products that protect against third party damage claims. They are in the best position both to protect against the contingent liability attached to purchasing such property and to discover the cause of the pollution. The Legislature balanced the competing interests of owners of contaminated property and victims of contamination, such as adjacent landowners, by allowing victims to maintain an action against the owners of contaminated property, while allowing such owners to avoid liability if they can prove they did not cause the contamination and did not know about it when they bought the property.

C. Other Parts of Section 376.313(3) Evidencing an Intent to Create a Cause of Action
Other aspects of the statute further evidence the legislature's intent to create a cause of action rather than modify existing ones. The title of section 376.313, "Nonexclusiveness of remedies and individual cause of action for damages under ss. 376.30-376.319," implies the creation of a new cause of action. We have previously stated that in determining legislative intent, we must give due weight and effect to the title of the section. State v. Webb, 398 So.2d 820, 824-25 (Fla.1981). "The title is more than an index to what the section is about or has reference to; it is a direct statement by the legislature of its intent." Id.
Another subsection further illuminates the Legislature's intent. Section 376.313(1) provides that "[t]he remedies in ss. 376.30-376.319 shall be deemed to be cumulative and not exclusive." This language evidences an intent in section 376.313(3) to create an entirely new cause of action cumulative to the common law. See St. Angelo v. Healthcare & Ret. Corp. of America, 824 So.2d 997, 999 (Fla. 4th DCA 2002) ("A `cumulative remedies' clause in a statute usually does not supersede other common law remedies."); cf. *26 Flo-Sun, Inc. v. Kirk, 783 So.2d 1029, 1036 (Fla.2001) (concluding that interpreting a cumulative remedies clause in section 403.191, Florida Statutes (1995), to foreclose other remedies "would be less than intellectually credible").
Finally, we find it probative that the statute contains an attorney's fees provision allowing a plaintiff to recover reasonable attorney's and expert witness fees. See § 376.313(6), Fla. Stat. (2002). Because attorneys' fees are not available in actions under the common law, the Legislature's provision for attorneys' fees is evidence that it was creating a new cause of action.
All these factors  the statute's provision of a damages remedy for the non-negligent discharge of pollution; the defenses provided in the statute, including the inclusion of lack of causation as an affirmative defense; and other aspects of the statute such as its title, the cumulative remedies clause and the attorney's fees provision  when combined with the statutory directive that section 376.313(3) should be liberally construed lead to the inevitable conclusion that the statute creates a cause of action for strict liability regardless of causation. See Gary K. Hunter, Statutory Strict Liability for Environmental Contamination: A Private Cause of Action to Remedy Pollution or Mere Legislative Jargon?, Fla. Bar J., Jan. 1998, at 50, 51 (proposing that given the title of section 376.313(3) and the phrase not prohibiting a cause of action, "[c]oupled with the further direction in the statute that such a suit would not require the plaintiff `to plead or prove negligence in any form or manner'; the specification of the limited defenses to such an action; and the inclusion of a cost and attorneys' fee award to the injured party, it is challenging to perceive any intent other than the creation of a private right of action for strict liability").

D. Aramark's Arguments
Aramark asserts several arguments for a contrary interpretation of the statute, which we now address. Aramark first asks us to adopt the rationale in Mostoufi. In that case, the court relied on the introductory language in section 376.313(3), which states that "nothing contained in ss. 376.30-376.319 prohibits any person from bringing a cause of action in a court of competent jurisdiction for all damages resulting from a discharge or other condition of pollution." The court reasoned, "because the statute is framed so as not to `prohibit' bringing a cause, we conclude we should not interpret the statute as `creating' a new cause of action that did not theretofore exist. It seems clear to us that the intent of the statute is to insure that it is not interpreted as preempting any private rights that were already in existence." 618 So.2d at 1376-77.
We disagree that this one phrase conclusively resolves the question. While the phrase, standing alone, may be so interpreted, it is only one factor. Moreover, although the phrase permits such an interpretation, it does not require it. It does not follow necessarily that because the statute is framed so as not to "prohibit" bringing a cause of action, it does not create one. It is just as possible  and, given the other provisions we have examined earlier, we believe more probable  that the statute refers to a new cause of action created in the statute. Moreover, the narrow interpretation applied in Mostoufi ignores the directive in section 376.315 that the statutory scheme, of which section 376.313 is part, be liberally construed. Cf. Dixon v. Sprint-Florida, Inc., 787 So.2d 968, 971-72 (Fla. 5th DCA 2001) (refusing to interpret statutory language *27 that an employee is entitled to file "a" complaint as limiting the employee to a single complaint, in part because it comported with the statutory command requiring a liberal construction of the statute).
Aramark also argues that the First District's interpretation of the statute would produce inconsistent results because in circumstances such as those present here it would allow private individuals, but not the DEP, to sue owners of contaminated property. Aramark argues that the DEP may only enforce the statute if the owner either caused the discharge or owned or operated the facility at the time the discharge occurred. See § 376.308(1)(a), Fla. Stat. (2002). In this case, neither situation applies. Therefore, Aramark argues, under the First District's interpretation of the statute, in this case a private individual could sue for damages but the DEP could not.
We disagree both that the statute draws such a distinction and that, if it did, the result would be incongruous. Aramark relies on section 376.308(1)(a), which limits the entities DEP can sue. The very next subsection, however, section 376.308(1)(b), allows the DEP to sue "all persons specified in s. 403.727(4)." That section allows the DEP to hold liable the "owner and operator of a facility" for damages arising from the discharge of "hazardous substances." Perchloroethlyene (PCE), which was found in Easton's groundwater, qualifies as a "hazardous substance" under both section 376.301(20) and section 403.703(29), Florida Statutes (2002). Chapter 403 does not define "facility," see § 403.703, Fla. Stat. (2002). We therefore resort to its plain meaning. See, e.g., L.B. v. State, 700 So.2d 370, 372 (Fla.1997) (stating that when the legislature has not defined a statutory term, a court may refer to a dictionary to ascertain its plain and ordinary meaning). "Facility" is defined as "something that is built, installed, or established to serve a particular purpose." Merriam Webster's Collegiate Dictionary 416 (10th ed.1994). Under this definition, Aramark is an "owner of a facility" under section 403.727(4)(a) and subject to suit by the DEP without proof of causation. Thus, allowing suits by private individuals without proof of causation will not grant greater rights to private parties than to the DEP.
Even if our interpretation did grant greater rights to private parties than to the DEP, our conclusion would not change. Valid reasons exist for reducing proof requirements for those directly affected by pollutive agents. In fact, many statutes grant private parties the right to sue for damages, while granting public agencies only the right to enjoin the unlawful conduct.[2] The DEP's powers are regulatory and concern the conduct of specific violators. See, e.g., § 376.305(2) Fla. Stat. (2002) ("If the person causing the discharge... fails to act immediately, the department may arrange for the removal of the pollutant...."). The primary purpose of a DEP suit is to enforce the statute and eliminate the pollution. The main purpose of a private suit is to compensate *28 the innocent victim of pollution. Section 376.313(6) reflects the essentially private purpose of individual suits by providing for attorney's fees and litigation costs only upon a determination that such an award is in the "public interest." Cf. Boardman Petroleum, Inc. v. Tropic Tint of Jupiter, Inc., 668 So.2d 308, 310 (Fla. 4th DCA 1996) (noting that an attorneys fees award was sufficiently in the "public interest" under section 376.313(6), even though the private plaintiff unquestionably received a personal benefit from the lawsuit). Therefore, even if Aramark were correct that our interpretation of the statute would allow private parties to sue where the DEP could not, that would simply reflect the legislative policy decision to allow private parties, the actual victims of pollution, greater ability to recover damages from the owners of contaminated property.

III. CONCLUSION
For the reasons stated, we approve the First District's decision in this case and hold that section 376.313 creates a cause of action. We disapprove Mostoufi to the extent it is inconsistent with this opinion. In accordance with the district court's decision, this case should be remanded to the circuit court to apply section 376.313(3) as a strict liability statute, without requiring proof that the petitioners caused the contamination on their own property, and to determine whether any of the statutory exceptions and defenses apply.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, QUINCE, and BELL, JJ., concur.
LEWIS, J., concurs in result only.
NOTES
[1] Aramark argues that the third party defense was meant to apply to common law claims against a narrow group of defendants such as general partners of polluters and persons liable for the acts of polluting employees under the doctrine of respondeat superior. This argument ignores the language of section 376.308(2)(d), which explicitly provides who the third party must be.
[2] For example, compare 400.102(2), Fla. Stat. (2002) (granting the supervising agency the ability to deny licenses and pursue injunctions against nursing home licensees for statutory violations); 400.126(1), Fla. Stat. (2002) (allowing the supervising agency to pursue the appointment of a receiver "[a]s an alternative to or in conjunction with an injunctive proceeding"); and 400.121, Fla. Stat. (2002) (authorizing the supervising agency to impose administrative fines); with 400.023(1), Fla. Stat. (2002) (allowing residents of nursing homes or their personal representatives to pursue a private cause of action against nursing home licensees for "actual or punitive damages for any violation of the rights of a resident or for negligence").